**LOUISIANA–PACIFIC CORPORATION,
Plaintiff,**

v.

**TEXAS DEPT. OF TRANSPORTATION and Southern Pacific Transportation Company, Defendants.**

No. 1:98–CV–1516.

United States District Court,
E.D. Texas,
Beaumont Division.

March 23, 1999.

Joe G. Roady, Sheinfield Maley & Kay, Houston, TX, for plaintiff.

Walter C. Brocato, Attorney General Office, Austin, TX, for defendant Texas D.O.T.

David P. Young, Houston, TX, Linda C. Schoonmaker, Bayco Gibson Carnegie, Hagan, Schoonmaker & Meyer, Houston, TX, for defendant Southern Pac.

*AMENDED MEMORANDUM OPINION*

COBB, District Judge.

In the 1880's, Plaintiff's predecessors in title (who owned property in question in fee simple) granted easements for railroad purposes to the Sabine and East Texas Railway Company. Southern Pacific Railway, the current defendant, subsequently acquired these easements..

In 1994, Southern Pacific, pursuant to The National Trails System Act of 1983, 16 U.S.C. § 1247(d) ("Trails Act") conveyed the easements in question to the Texas Department of Transportation. The Trails Act allows a railroad wishing to cease operations on a line to negotiate with, among others, a State or political subdivision to allow the railroad right-of-way to be converted to a public trail. 16 U.S.C. § 1247(d). The purpose of the Act is to increase the number of trails in the United States and to preserve rail corridors for potential future use. The Trails Act treats conversions such as the one at issue in this case as a discontinuance, and not an abandonment (as Plaintiffs try to allege), and retains ICC jurisdiction over the line. *Id.* (the ICC, or Interstate Commerce Commission, has since been replaced by the Surface Transportation Board, or STB *see National Association of Reversionary Property Owners v. Surface Transportation Board,* 158 F.3d 135 (D.C.Cir.1998)).

In its original petition in state court, Plaintiff alleged that the Trails Act was unconstitutional and that the Defendants' actions constituted a taking without due process of law and consequently a violation of the 5th and 14th Amendments of the United States Constitution. In addition, Plaintiff alleged that Defendants actions violated due process under the Texas Constitution, a takings provision in § 2007.044 of the Texas Code, and also clouded their title to the land.

After Plaintiff filed its initial petition, Defendants properly and timely removed to this Court. Plaintiff then filed a motion for leave to amend its complaint (which

has not yet been granted), dropping all federal claims and keeping only the state law claims. The question at issue is whether the case in its present posture should be remanded to state court.

## ANALYSIS

■ The first question to be answered is whether the Court has jurisdiction. *Marathon Oil Co. v. Ruhrgas,* 145 F.3d 211 (5th Cir.1998). According to *Ruhrgas,* "the appropriate course is to examine for subject matter jurisdiction constantly and, if it is found lacking, to remand to state court if appropriate, or otherwise dismiss." *Ruhrgas* at 220 *citing Ziegler v. Champion Mortgage Co.,* 913 F.2d 228 (5th Cir.1990).

■ In this case, the mere fact that Plaintiff here indicated a desire to drop its federal claims does not answer the question whether this Court retains subject matter jurisdiction. In fact, when a Plaintiff drops federal claims and only retains state law claims then the Court has discretion whether to order a remand. *In re Ben Carter,* 618 F.2d 1093, 1101 (5th Cir. 1980) (holding that a Plaintiff cannot rob the district court of subject matter jurisdiction by electing to amend away the ground for federal jurisdiction). *See also St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845. Indeed, it is fundamental that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed. *Carter at* 1101; *Pullman Co. v. Jenkins,* 305 U.S. 534 537–38, 59 S.Ct. 347, 83 L.Ed. 334.

■ That having been said, the accepted rule in the 5th Circuit is that upon removal the removal court should inspect the complaint to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law. *Carter at* 1101; *see also Romick v. Bekins Van & Storage Co.,* 197 F.2d 369 (5th Cir.1952). The reviewing court should look to the substance of the complaint, not merely the labels used in it. *Carter at* 1101; *Smith v. Local 25, Sheet Metal Workers Int'l Ass'n,* 500 F.2d 741, 748–49 (5th Cir.1974). At issue in this case, as much as Plaintiffs attempt to deny it, is fundamentally a federal law claim. Plaintiff's attempt to transform its action into a state law action by simply evidencing its desire to drop its federal claims is impermissible.

The transfer of land between the defendants was conducted pursuant to the Rails to Trails Act, a Federal Statute. Federal law supercedes state law. U.S. Constitution Art. VI § 2. Plaintiff's claims, which center around a takings theory, are rooted in state law (one cites Section 2007.044 of the Texas Code, requiring that a "takings impact assessment" be made before the government takes private land. Another cites Article I, § 17 of the Texas Constitution, requiring that compensation be paid to private individuals who suffer a taking at the hands of the state government). Plaintiff's claims are rooted in state law, and because the transfer in question occurred pursuant to a Federal statute, Plaintiff's claims are superceded by the Federal statute and do not belong in state court.

■ Just because a takings claim cannot be made pursuant to state law, does not mean that a takings claim cannot be made at all. It simply means that it must be brought pursuant to the Federal statute. In this case, takings claims rooted in transfers conducted pursuant to the Rails to Trails should be brought under the Tucker Act. *Preseault v. I.C.C.,* 494 U.S. 1, 22, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (holding that, the Tucker Act provides an appropriate remedy for claims brought under to the Trails Act). The appropriate venue for such an action, provided that it exceeds $10,000 is the United States Court of Claims. 28 U.S.C.A. § 1491(a)(1) (the Tucker Act); *Preseault,* 494 U.S. 1, 4–5, 110 S.Ct. 914, 108 L.Ed.2d 1; *U.S. v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980); *Graham v. Henegar,* 640 F.2d 732

(5th Cir.1981) (holding that the Federal Court of Claims has exclusive jurisdiction over nontort claims for money damages against the United States over $10,000). [Incidentally, this court, under 28 U.S.C. § 1631 has the discretionary authority to transfer claims to the Court of Federal Claims. 28 U.S.C. § 1631; *Dunn McCampbell Royalty Interest v. Nat. Park Serv.*, 964 F.Supp. 1125, 1139 (S.D.Tex. 1995) ].

The United States Court of Claims, although it can hear the takings claim and decide on monetary restitution, can only decide on monetary claims, and therefore cannot grant Plaintiff's wish to have the alleged cloud lifted from its title. *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *Lee v. Thornton*, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975). This cloud, as Plaintiff describes it, derives from the transfer of the property in question which Plaintiff attempts to frame as an abandonment. Under the Trails Act, however, if the I.C.C. (now the S.T.B) approves a transfer of land pursuant to the Trails Act, then it is not classified as an abandonment, 16 U.S.C.A. § 1247(d), but a discontinuance. *Grantwood Village v. Missouri Pacific R.R. Co.*, 95 F.3d 654, 658.

In the case at hand, the I.C.C. *did* approve the transfer. Therefore, it is not an abandonment, and Plaintiff's claim to the contrary, is in essence a collateral attack on the I.C.C.'s order, similar to the allegation at issue in *Grantwood*, 95 F.3d 654. In *Grantwood*, Plaintiffs attempted to characterize their claim as a "quiet title" action. The transfer of property in question, however, like the transfer at issue in this case, was conducted pursuant to the Rails to Trails Act and was in compliance with an I.C.C. order. Consequently, the Eighth Circuit ruled that a challenge to the Defendant's interest in the property amounted to a collateral attack on the I.C.C. ruling. *Id.* at 657. Such an attack, the Court continued, necessarily involved Federal law, and therefore did not belong

in state court. *Id.* at 657. Further, the appropriate venue for bringing such an attack, the Court ruled, is neither state nor U.S. District Court, but rather, U.S. Court of Appeals. *Id.* at 658 *citing* 28 U.S.C.A. § 2342(5) (the Hobbs Act) (stating that circuit courts have exclusive jurisdiction over any action to enjoin, suspend or determine the validity of an I.C.C. order); *see also Glosemeyer v. Missouri–Kansas–Texas R.R.*, 879 F.2d 316, 320 (8th Cir.1989).

## CASES WITH SIMILAR FACT PATTERNS

Denying the Plaintiff's motion to remand and either dismissing the case, or severing the claims and transferring them would not contradict findings by other courts in similar cases around the country. Although no cases exist in the 5th Circuit that deal with Rails to Trails Act, several cases in other districts, and one from the United States Supreme Court do. In the Supreme Court case, entitled *Preseault v. I.C.C.*, 494 U.S. 1, 22, 110 S.Ct. 914, 108 L.Ed.2d 1 (1989), the Supreme Court of the United States faced facts similar to those at issue in this case. Specifically, the Plaintiff in Preseault claimed a reversionary interest in a railroad right-of-way and brought a quiet title action alleging that the easement had been abandoned and was thus extinguished (the Vermont Railway had stopped using the route for over a decade and had since removed all railroad equipment from the contested property persuant to the Trails Act). The I.C.C. issued a ruling approving an agreement made concerning the property pursuant to the Trails Act and consequently allowed the railroad to discontinue service (as it did in the case at bar). The Plaintiff then challenged the I.C.C. order in the Court of Appeals for the 2nd Circuit on the grounds that it authorized the taking of private property by the Government without issuing just compensation.

The Supreme Court held that as long as the government has provided an adequate

process for obtaining just compensation, then the property owner has no claim against the Government for a taking. 494 U.S. at 11, 110 S.Ct. 914, *citing Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The Court further held that the government has provided just such a process via the Tucker Act: "taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act." 494 U.S. at 11, 110 S.Ct. 914 *citing from Williamson County,* 473 U.S. at 195, 105 S.Ct. 3108. Further, the Supreme Court held that the Tucker Act applies to claims arising under the Trails Act: "[W]e find that rail-to-trail conversions giving rise to just compensation claims are clearly authorized by § 8(d)." 494 U.S. at 13, 110 S.Ct. 914, and "We reaffirm that a Tucker Act remedy exists unless there are unambiguous indications to the contrary." *Id.*

The proper venue for claims brought under the Tucker Act, the Court continued, is the United States Claims Court: "The Tucker Act provides jurisdiction in the United States Claims Court for any claim against the Federal Government to recover damages founded on the Constitution, a statute, a regulation, or an express or implied-in-fact contract." *See* 28 U.S.C. § 1491(a)(1) (1982 ed.); *see also* § 1346(a)(2) (Little Tucker Act, which creates concurrent jurisdiction in the district courts for such claims not exceeding $10,-000 in amount).

Transferring the case to the United States Claims Court would not interfere with Plaintiff's state law claims. On the contrary, state law is central to determining property rights. As the Supreme Court stated in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548:

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. *Id.* at 577, 92 S.Ct. 2701.

Earlier cases with similar fact patterns in which state law claims were in question were correctly brought in U.S. Claims Court. *See Preseault v. United States,* 27 Fed.Cl. 69, *reversed and remanded in Preseault v. United States,* 100 F.3d 1525 (Fed.Cir.1996) arising from the same facts as *Preseault v. I.C.C.* 494 U.S. at 22, 110 S.Ct. 914 (*Preseault I*), and consequently known as *Preseault II.* In *Preseault II,* owners of property subject to railroad rights of way brought claim in the U.S. Court of Claims against the United States for just compensation under Fifth Amendment for alleged taking of their land, based on conversion of rights-of-way into a public recreational trail. The Circuit Court for the Federal Circuit held that the conversion of the railroad into a private trail constituted a taking of private property for public use and consequently ordered that the case be remanded to the U.S. Claims Court so that just compensation could be paid.

Likewise, in *Chevy Chase Land Company v. United States,* 37 Fed.Cl. 545 (1997) the United States Court of Federal Claims asserted jurisdiction to determine title to real property as a preliminary matter when addressing a takings claim involving the Rails to Trails Act. *Id.* at 564, 565. Specifically, in *Chevy Chase* a land company brought action against the United States and county, alleging a taking of a railroad right-of-way by operation of the Rails–to–Trails Act in the United States Court of Claims.

In a similar vein, in *Trustees of the Diocese of Vermont v. Vermont Railway, Inc.,* 145 Vt. 510, 496 A.2d 151 (1985), the Supreme Court of Vermont ruled on a case whose fact pattern paralleled and indeed derived from the one in *Preseault* I and II and concluded that state court was not the proper venue for bringing a claim that involved a taking under the Trails

Act. In *Vermont Railway*, the Court recognized that the ICC has plenary authority in the area of determining whether an action under the Trails Act constitutes an abandonment. Consequently, courts are only empowered to enjoin actions pending disposition of the matter by the ICC. In the case at hand, the ICC approved of the transfer between Southern Pacific and the Texas Department of Transportation. Therefore, to determine that an abandonment did occur, would strip the ICC of its authority to determine that an abandonment did not occur, thereby eviscerating with the laws of Congress.

## CONCLUSION

The essence of Plaintiff's claim has two parts: (1) a taking occurred and therefore it should receive just compensation, and (2) a cloud has been placed on its title.

In regard to the first part of Plaintiff's claim, in cases like the Plaintiff's involving the Trails Act, the United States Court of Federal Claims has been the appropriate venue in which these types of allegations have been brought. Not only does the Court of Claims determine if just compensation is due, but it also determines if a taking in fact occurred.

In regard to Plaintiff's desire to have the alleged cloud removed from its title, this claim cannot be brought in Federal Claims Court. Not only does it not involve monetary compensation, but it amounts essentially to a collateral attack on the I.C.C. ruling, and, therefore, should have been attacked in the appropriate U.S. Court of Appeals.

For the foregoing reasons, this case is dismissed without prejudice to file in the U.S. Court of Claims. Costs are taxed against the plaintiff.