[No. 45436-6-I. Division One. January 29, 2001.]

RANDY GOOD, ET AL., *Appellants*, v. SKAGIT COUNTY, *Respondent*.

*Russell C. Brooks*, for appellants.

*Thomas L. Verge*, *Prosecuting Attorney*, and *Paul H. Reilly*, *Deputy*, for respondent.

APPELWICK, J. — The question presented in this appeal is whether the National Trails System Act, 16 U.S.C. § 1247(d), preempts state law on just compensation remedies such that a petitioner must bring a claim for just compensation under the Tucker Act in the Federal Court of Claims. We conclude that it does, and accordingly, affirm the trial court.

## STATUTORY AND REGULATORY BACKGROUND

In 1983, Congress amended the National Trails System Act (Trails Act), 16 U.S.C. § 1247(d), to solve the problem caused by state property law that allowed railroad easements to lapse upon abandonment of rail service. To avoid having easements lapse, the amendment directs several federal agencies to encourage state or local agencies or private organizations to develop inactive rail corridors for recreational use, subject to future restoration of rail services.[1] "[I]n the case of interim use of any established railroad rights-of-way . . . such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d).

When a railroad carrier wishes to abandon a corridor it files an application for abandonment with the Surface Transportation Board (STB, formerly the Interstate Commerce Commission (ICC)). 49 C.F.R. §§ 1152.20(b), 1152.24(a). The STB publishes notice of the application in the Federal Register. 49 C.F.R. § 1152.24(e)(2). If a state or local government, or a private entity, is interested in

---

[1] 16 U.S.C. § 1247(d) provides:

The Secretary of Transportation, the Chairman of the Surface Transportation Board, and the Secretary of the Interior, in administering the Railroad Revitalization and Regulatory Reform Act of 1976 [45 U.S.C. §§ 801-838], shall encourage State and local agencies and private interests to establish appropriate trails using the provisions of such programs. Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

converting the railroad corridor to a trail, it must submit a trail use proposal within 45 days of the filing of the abandonment application. 49 C.F.R. § 1152.29(b)(1). The proposal must include a map depicting the right-of-way proposed to be acquired, a statement of willingness to manage the corridor, assume liability, and pay taxes, and an acknowledgment that interim trail use is subject to possible future restoration of rail service. 49 C.F.R. § 1152.29(a). The STB then determines whether the Trails Act is applicable. 49 C.F.R. § 1152.29(b)(1). If no trail use proposals conform to 49 C.F.R. § 1152.29(a), the STB authorizes the railroad to abandon the line, and the line is no longer part of the national transportation system. If there is a qualifying trail use proposal, the railroad may decide whether to attempt to negotiate a trail use agreement with the prospective trail operator. 49 C.F.R. §§ 1152.29(b)(1), (d)(1). If the railroad declines that option, abandonment is authorized. 49 C.F.R. § 1152.29(b)(1)(ii). If the carrier chooses to negotiate an agreement with the prospective trail operator, and the negotiations are successful, the STB may permit the railroad to discontinue rail service and allow interim trail use for an indefinite period of time.

## FACTS

In 1988 and 1993, the Burlington Northern Railroad (Burlington) sought permission from the STB to abandon 11.28 miles of rail service on two segments of a right-of-way between Sedro Woolley and Concrete. In compliance with the Trails Act, Skagit County acquired Burlington's right-of-way to the property for use as a public trail.

In 1997, the Goods petitioned the STB to reopen the abandonment proceedings for the two segments of right-of-way previously held by Burlington. The Goods claimed, among other things, that they had full possessory rights to the land, and were entitled to compensation under Washington law for Skagit County's alleged "taking" of their

property. The STB found no basis to reopen the abandonment proceedings. The STB also noted that compensation claims arising out of the operation of the railbanking statute must be brought to the U.S. Court of Claims. The United State Court of Appeals subsequently affirmed the STB decision. *Good v. Surface Transp. Bd.*, No. 97-1700, 1998 U.S. App. LEXIS 7905, 1998 WL 202143 (D.C. Cir. Mar. 31, 1998), *reh'g denied*, (June 17, 1998).

In 1999, the Goods filed the present case against Skagit County in the Whatcom County Superior Court for just compensation under RCW 64.04.180[2] and the Washington Constitution, article I, section 16.[3] Skagit County removed the case to the United States District Court for the Western District of Washington. Judge Zilly of the federal district court subsequently granted the Goods' motion to remand the case back to state court. Finding that the Goods' complaint did not establish a federal question, but rather asserted state law claims only, Judge Zilly concluded that no federal jurisdiction existed.

On remand, the Whatcom County Superior Court dismissed the Goods' complaint on summary judgment, ruling that the court had no jurisdiction over the matter. The Goods appeal, claiming that the laws of this State require Skagit County to compensate the Goods for the taking of their private property rights.

---

[2] RCW 64.04.180 provides in full:

Railroad properties, including but not limited to rights-of-way, land held in fee and used for railroad operations, bridges, tunnels, and other facilities, are declared to be suitable for public use upon cessation of railroad operations on the properties. It is in the public interest of the state of Washington that such properties retain their character as public utility and transportation corridors, and that they may be made available for public uses including highways, other forms of mass transportation, conservation, energy production or transmission, or recreation. Nothing in this section or in RCW 64.04.190 authorizes a public agency or utility to acquire reversionary interests in public utility and transportation corridors without payment of just compensation.

[3] Washington Constitution, article I, section 16, provides in relevant part that "No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner . . . ."

## DISCUSSION

The claims in this case turn on whether railroad operations have been abandoned or discontinued; if so, whether the Goods have an interest in the railway right-of-way which entitles them to compensation for its continued use by others; and whether state courts have jurisdiction over any claims for compensation. For purposes of reviewing the summary judgment dismissal for lack of jurisdiction, we will assume without deciding that railroad operations have been abandoned or discontinued and that the Goods have an underlying ownership interest as pleaded.

The Goods claim that our State Supreme Court in *Lawson v. State*, 107 Wn.2d 444, 730 P.2d 1308 (1986), authorized a compensation claim under the Washington State Constitution against a local trail manager. But *Lawson* did not involve an alleged taking under section 1247(d) of the Trails Act. The local trail manager, King County, acquired use of an *abandoned* corridor under 49 U.S.C. § 10906 and 49 C.F.R. § 1152.28. The Court addressed our State's property law, noting that when a railroad company "abandons" a line, the railroad right-of-way reverts to a reversionary interest holder. *Lawson*, 107 Wn.2d at 449. Finding that section 10906, the predecessor to the railbanking statute, did not preempt state law regarding a landowner's reversionary interests upon abandonment, the Court required King County to compensate the landowners for use of the right-of-way. The Court further held that Washington's railbanking statute, RCW 64.04.190, violated article I, section 16 of the Washington Constitution by appropriating the reversionary interests of the plaintiffs without payment of just compensation. *Lawson*, 107 Wn.2d at 458.

■ *Lawson* has no application here. The Court did not discuss section 1247(d) of the Trails Act. In this case, Skagit County acquired the disputed property under the Trails Act.[4] The Act specifically provides that interim trail use under the Act "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such

---

[4] As a result of *Lawson*, the Legislature amended the railbanking statute as follows: "Nothing in this section or in RCW 64.04.190 authorizes a public agency or utility to acquire reversionary interests in public utility and transportation corridors without payment of just compensation."

rights-of-way for railroad purposes." 16 U.S.C. § 1247(d). By deeming interim trail use to be a discontinuance rather than abandonment, Congress effectively prevented property interests from reverting under state law. *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 8, 110 S. Ct. 914, 108 L. Ed. 2d 1 (1990). During the interim trail use, the STB retains jurisdiction over the line. *Preseault*, 494 U.S. at 5 n.3. So long as the STB retains jurisdiction, state law, including that governing creation and extinguishment of easements, is preempted. *See Hayfield N.R.R. v. Chi. & N.W. Transp. Co.*, 467 U.S. 622, 633-34, 104 S. Ct. 2610, 81 L. Ed. 2d 527 (1984) (absent a determination of abandonment, the rail property will remain within the STB's jurisdiction); *Trs. of Diocese v. State*, 145 Vt. 510, 496 A.2d 151 (1985).

In *Preseault*, 494 U.S. 1, the owners of land adjoining a right-of-way brought a quiet title action in Vermont's superior court. The Preseaults claimed that the railroad's abandonment of the right-of-way had caused it to revert to them. The superior court dismissed the case, holding that it lacked jurisdiction because the ICC had not authorized the abandonment. Therefore, according to the superior court, the ICC retained exclusive jurisdiction over the matter. The Vermont Supreme Court affirmed the ruling.

The Preseaults' case found its way to the United States Supreme Court. The Court reaffirmed that "State law generally governs the disposition of reversionary interests, subject of course to the ICC's 'exclusive and plenary' jurisdiction to regulate abandonments . . . ." *Preseault*, 494 U.S. at 8 (quoting *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321, 101 S. Ct. 1124, 1132, 67 L. Ed. 2d 258 (1981)). In concluding that Congress did not violate the Fifth Amendment by precluding reversion of state property interests, the Court said that "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Preseault*, 494 U.S. at 11. (Citations

omitted). Because the Preseaults had failed to pursue a remedy under the Tucker Act, the Court found that the Preseaults' takings claim was premature. *Preseault*, 494 U.S. at 17.

 The Goods assert that while *Preseault* authorizes compensation from the federal government, it does not do so to the explicit exclusion of state remedies. Two federal decisions have resolved this issue against a landowner for state claims.

In *Louisiana-Pacific Corp. v. Texas Department of Transportation*, 43 F. Supp. 2d 708 (E.D. Tex. 1999), the federal district court concluded that the property owner's petition for compensation was "fundamentally a federal law claim" despite the property owner's attempt to amend his original complaint to drop federal claims against an interim trail manager and keep only the state law claims. *Louisiana-Pacific*, 43 F. Supp. 2d at 710. The court reasoned:

> The transfer of land between the defendants was conducted pursuant to the Rails to Trails Act, a Federal Statute. Federal law supercedes state law. U.S. Constitution Art. VI § 2. Plaintiff's claims, which center around a takings theory, are rooted in state law (one cites Section 2007.044 of the Texas Code, requiring that a "takings impact assessment" be made before the government takes private land. Another cites Article I, § 17 of the Texas Constitution, requiring that compensation be paid to private individuals who suffer a taking at the hands of the state government). Plaintiff's claims are rooted in state law, and because the transfer in question occurred pursuant to a Federal statute, Plaintiff's claims are superceded by the Federal statute and do not belong in state court.

*Louisiana-Pacific*, 43 F. Supp. 2d at 710. The court further noted that the United States Court of Federal Claims has been the appropriate venue for claims involving the transfer of land under the Trails Act. "Not only does the Court of Claims determine if just compensation is due, but it also determines if a taking in fact occurred." *Louisiana-Pacific*, 43 F. Supp. 2d at 713.

Just because a takings claim cannot be made pursuant to state law, does not mean that a takings claim cannot be made at all. It simply means that it must be brought pursuant to the Federal statute. In this case, takings claims rooted in transfers conducted pursuant to the Rails to Trails should be brought under the Tucker Act. *Preseault v. I.C.C.*, 494 U.S. 1, 22, 110 S. Ct. 914, 108 L.Ed. 2d 1 (1990) (holding that, the Tucker Act provides an appropriate remedy for claims brought under to the Trails Act). The appropriate venue for such an action, provided that it exceeds $10,000 is the United States Court of Claims. 28 U.S.C.A. § 1491(a)(1) (the Tucker Act); *Preseault*, 494 U.S. 1, 4-5, 110 S.Ct. 914, 108 L.Ed.2d 1; *U.S. v. Will*, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980); *Graham v. Henegar*, 640 F.2d 732 (5th Cir.1981) (holding that the Federal Court of Claims has exclusive jurisdiction over nontort claims for money damages against the United States over $10,000). [Incidentally, this court, under 28 U.S.C. § 1631 has the discretionary authority to transfer claims to the Court of Federal Claims. 28 U.S.C. § 1631; *Dunn McCampbell Royalty Interest v. Nat. Park Serv.*, 964 F.Supp. 1125, 1139 (S.D.Tex. 1995)].

*Louisiana-Pacific*, 43 F. Supp. 2d at 710-11.

The Goods claim that *Louisiana-Pacific* has no bearing on the case at hand because the property owner in *Louisiana-Pacific* also alleged violations of federal law, and, therefore, the property owner's claim was federal in nature. But the federal district court looked at the substance of the amended complaint and found that it was rooted in federal law despite the plaintiff's desire to drop its federal claims.

The Goods further assert that the differences in the claims presented in this case and in *Louisiana-Pacific* are significant, as illustrated by Judge Zilly's order in this case remanding the Goods' case back to state court. Contrary to the Goods' interpretation, Judge Zilly did not remand the case to state court for lack of complete preemption, but rather remanded the case based on the holding of *Dave v. Rails-To-Trails Conservancy*, 79 F.3d 940, 942 (9th Cir. 1996). In *Dave*, the Ninth Circuit Court held that federal district courts lack jurisdiction to hear the very type of case brought by the Goods. The court concluded that such a

compensation claim arising out of a transfer under the Trails Act had the practical effect of seeking review of an ICC (now STB) order. *See Dave*, 79 F.3d at 942. To hold interim trail managers liable for preserving the rights-of-way would be, as the Ninth Circuit Court observed "a monkey wrench thrown into the intended operation of the Rails-to-Trails Act. It is a monkey wrench that impacts the orders of the ICC granting the NITUs [Notice of Interim Trail Use or Abandonment]. Although not in form a request for review of an ICC order, the practical effect is to seek such a review." *Dave*, 79 F.3d at 942. The court concluded that "[o]nly the United States Court of Federal Claims has jurisdiction for the takings allegedly effected by the transfer of the railroad easements." *Dave*, 79 F.3d at 942, citing *Preseault*, 494 U.S. at 17.

After noting the holding in *Dave*, Judge Zilly ended his order, stating "[s]uch a review is only appropriate in a court of appeals. *Dave*, 79 F.3d at 942 (citing *Presault*, 494 U.S. at 17); *see also* 28 U.S.C. § 2342(5). As district courts have no jurisdiction over such matters, this case should be remanded to the state court."[5] Having concluded that the United States Court of Claims has exclusive jurisdiction over the present matter, Judge Zilly had no reason to analyze the federal preemption doctrine.

The Tucker Act gives the United States Claims Court jurisdiction over "any claim against the United States founded either upon the Constitution, or an Act of Congress or any regulation of an executive department . . . ." 28 U.S.C. § 1491(a)(1). Any taking that may have occurred in this case, occurred by operation of an act of Congress not by subsequently authorized use by Skagit County. In accordance with *Louisiana-Pacific* and *Dave*, we conclude that allegations of a taking resulting from a transfer of property

---

[5] 28 U.S.C. § 2342 provides in relevant part: "Jurisdiction of court of appeals. The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—. . . (5) all rules, regulations, or final orders of the Surface Transportation Board made reviewable by Section 2321 of this title[.]"

under the Trails Act must be brought in the United States Court of Claims. Since we do not have jurisdiction over the takings issue, we need not address whether the Goods have the ownership interest as pleaded or whether the railroad operations have been discontinued or abandoned. By enacting section 1247(d) and authorizing state or local agencies or private organizations to develop inactive rail corridors for recreational use, Congress preempted state courts from entertaining a compensation claim arising out of the operation of the Trails Act.

Affirmed.

BECKER, A.C.J., and WEBSTER, J., concur.

Review denied at 144 Wn.2d 1013 (2001).