**LONGNECKER PROPERTY, et al., for Themselves, and as Representatives of a Class of Similarly Situated People, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 09–173L.

United States Court of Federal Claims.

April 30, 2012.

Brent W. Baldwin, Baker Sterchi Cowden and Rice, LLC, St. Louis, Mo., for the plaintiffs. With him were Steven M. Wald and J. Robert Sears, Baker Sterchi Cowden and Rice, LLC, St. Louis, Mo., and Thomas S. Stewart and Elizabeth C. McCulley, Baker Sterchi Cowden and Rice, LLC, Kansas City, Mo., of counsel.

Bruce K. Trauben, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for the defendant. With him was Ignacia S. Moreno, Assistant Attorney General, Environment and Natural Resources Division.

## OPINION

HORN, J.

At issue is a 3.46 mile right of way in Thurston County, Washington. The plaintiffs in this *Longnecker* class action allege that when the United States Department of Transportation, Surface Transportation Board (STB) issued a Notice of Interim Trail Use (NITU), pursuant to the National Trails System Act, 16 U.S.C. §§ 1241–1251 (2006), and authorized conversion of the railroad line for use as a public recreational trail, the federal government denied plaintiffs their reversionary interest in the rights of way located on their properties, formerly occupied by a railroad. Plaintiffs, therefore, claim the United States effected a taking, compensable under the Fifth Amendment to the United States Constitution. This opinion addresses cross-motions for partial summary judgment regarding those deeds which conveyed only easements, and whether the scope of the easements was exceeded by the issuance of the NITU. Previously, on March 2, 2012, this court issued an Order dismissing certain claims which conveyed only fee interests. The facts established in the March 2, 2012 Order are incorporated into this opinion. Certain of the relevant facts are briefly repeated below, together with additional facts pertinent to this opinion.

## FINDINGS OF FACT

The parties have stipulated that the majority of the railroad line in question was originally acquired by the Tacoma, Olympia and Gray's Harbor Railroad Company (the TO & GHR) and its successor, the Northern Pacific Railway (the NPR). Between July 1890 and February 1911, the TO & GHR and the NPR acquired the land needed to construct the railroad by deeds granted by the plaintiffs' predecessors in title to the railroad:[1] Jane Adams and Mary and G.W. Carpenter,[2] Charles and Gertrude Hochhaus,[3] William Stewart,[4] Allen and Ellen Weir,[5] John M. and Sarah E. Patton,[6] J.C. and Eva Ellis,[7] David

1. Additional conveyances in this case are not at issue in the pending cross-motions for partial summary judgment, and, therefore, are not addressed in this opinion. These include an ordinance issued by the City of Olympia conveying an easement or license to the NPR to operate its railroad within its city, which the plaintiff concedes does not apply to any of the plaintiffs' parcels, and a deed whereby the NPR granted an easement to the TO & GHR. The parties "have agreed to defer resolution of the interest held by the railroad in the area of the line covered by the [NPR] to the [TO & GHR] deed, so that they can continue to investigate the issues involved and also attempt to resolve the issues without Court intervention."

2. The plaintiff whose property interest is associated with the Jane Adams and Mary and G.W. Carpenter Deed (the Adams/Carpenter Deed) was R.E. Carpet. As discussed below, in a March 2, 2012 Order, this court determined that the Adams/Carpenter Deed conveyed a fee interest for which the government was not liable for a taking and dismissed those claims dependant on the Adams/Carpenter Deed.

3. The plaintiffs whose property interests are associated with the Charles and Gertrude Hochhaus Deed (the Hochhaus Deed) were Chandler Investment II, LLC and Peter and Kathryn Fluetsch. As discussed below, in the March 2, 2012 Order, this court determined that the Hochhaus Deed conveyed a fee interest for which the government was not liable for a taking and dis-

missed those claims dependant on the Hochhaus Deed.

4. The plaintiffs whose property interests are associated with the William Stewart Deed (the Stewart Deed) were Kathleen and Dennis Boos, Peter and Kathryn Fluetsch, and St. Martin's Abbey. As discussed below, in the March 2, 2012 Order, this court determined that the Stewart Deed conveyed a fee interest for which the government was not liable for a taking and dismissed those claims dependant on the Stewart Deed.

5. The plaintiffs whose property interests are associated with the Allen and Ellen Weir Deed (the Weir Deed) were Kris and Lauri O'Bannon. As discussed below, in the March 2, 2012 Order, this court determined that the Weir Deed conveyed a fee interest for which the government was not liable for a taking and dismissed those claims dependant on the Weir Deed.

6. The plaintiffs whose property interests are associated with the John M. and Sarah E. Patton Deed (the Patton Deed) are Paul and Diana Bowyer, Michael Lundsten, Larry and Soon Ja Spolarich, and Woodland Creek Estate Homeowners' Association. Regarding all current *Longnecker* class action plaintiffs, including those mentioned in footnotes 6–13, the property interests are currently "based on the parties' best efforts ... subject to confirmation by a professional engineer or mapping service, or by stipulation of the parties...." At this time, the court does not

and Ella N. Fleetwood,[8] Joseph and Almeda G. Rowe,[9] George W. and Mary A. Carpenter,[10] John M. and Jane Adams,[11] David and Elizabeth Chambers,[12] and Herman J. and Emilie G. Frase.[13]

The parties have stipulated that the deeds at issue in this opinion, the Patton Deed, the Ellis Deed, the Fleetwood Deed, the Rowe Deed, the Carpenter Deed, the Adams Deed, the Chambers Deed, and the Frase Deed, each titled, "Right of Way Deed" (collectively, the Right of Way Deeds), conveyed only easements to the TO & GHR. Despite variations in the grantors' names, the dates the deeds were executed, the amount of consideration paid, and the property descriptions, the Patton Deed, the Ellis Deed, the Fleetwood Deed, the Rowe Deed, the Carpenter Deed, the Adams Deed, the Chambers Deed, and

the Frase Deed contain nearly identical formats, including nearly identical granting, habendum, and reverter clauses. The only differences between the granting, habendum, and reverter clauses in the Right of Way Deeds occur in spelling and punctuation, except that the Fleetwood Deed does not state the width of the right of way and the Adams Deed grants "a right of way One hundred and fifty feet in width," comprised of "a strip of land Fifty feet in width on such each side of the center line ... [and] also a strip fifty feet wide on the south side of and adjoining such strip already described." Examples of a few slight variations in the language of the other Right of Way Deeds are: the Patton Deed contains an additional stipulation that the TO & GHR build a fence on both sides of

make a final, legal judgment as to the validity of chain of title regarding any of the properties brought by the plaintiffs in the *Longnecker* class action included in footnotes 6–13.

7. The plaintiffs whose property interests are associated with the J.C. and Eva Ellis Deed (the Ellis Deed) are Nathaniel and Thelma Jackson, Sprout Family Revocable Living Trust, and Western Washington Sheet Metal JATC.

8. The plaintiffs whose property interests are associated with the David and Ella N. Fleetwood Deed (the Fleetwood Deed) are Nathaniel and Thelma Jackson and Sprout Family Revocable Living Trust.

9. The plaintiffs whose property interests are associated with the Joseph and Almeda G. Rowe Deed (the Rowe Deed) are Kay Packaging Company, Stuart Sulman, James and Neil Keller, Vasick Real Estate LLC, and Western Washington Sheet Metal JATC.

10. The plaintiffs whose property interests are associated with the George W. and Mary A. Carpenter Deed (the Carpenter Deed) are Jay and Barbara Dayton, Herrick Higson II, Cheryel Jean Higson, Kevin Turner Investment Properties LLC, Money Saver Lacey Associates, LLC, Mueller/Doyle Lacey Venture, New Zion Baptist Church, and Villa Del Vista Condominium Association.

11. The plaintiffs whose property interests are associated with the John M. and Jane Adams Deed (the Adams Deed) are Judith Crawford, Robert Helstrom, Newmarket I, R.E. Carpet, Restructuring Concrete, Inc., Ryder Family, LLC, Kenneth and Teresa Trapp, and Kevin Turner Investment Properties, LLC.

12. The plaintiffs whose property interests are associated with the David and Elizabeth Chambers Deed (the Chambers Deed) are 2003 JLR Family LLC, Andbry Properties LLC, Capital Development Company, William and Marilyn Carruth, Elaine Hanson, Sang Ho and Mi Young Choi, Walter Cox, James Dyer, Josephine Evans, Happy Teriyaki III, Inc., John Hartung, Charles and Diane Kennedy, Aurelia Kennish, Joseph Kennish, individually, and on behalf of Richard Kennish, Frances Kennish Mackenzie, A. Mary Osborne, William Kennish, David Kennish, Peter Kennish, James Kennish, Anthony Kennish, through power of attorney, the Helen Marie Stubbings Trust, Kevin Turner Investment Properties, LLC, Nae To Ki, Sung Kim, Ivan Kralovensky, Lacey Town Square, LLC, Lion–El Properties, Inc., Macarios, Inc., Margent Corporation, Patrick and Sharon Martin, Meadow Green Park, LLC, Don Miles, by and through his personal representative, Jane Hanson, Gretchen Morris, Benjamin Morton, Olympia Lodge No. 1759 Loyal Order of Moose, Jim and Donna Palmer, Rick and Coleen Parnell, Robert and Shirley Pearsall, Richard and Kathy Peregrin, Kenneth and Robin Phillips, Prime Enterprises, LLC, R.I.C. 20 Ltd., by and through its general partner, Realty Income Corporation, Leo and Cecilia Roberts, individually, and as Trustees of Living Trust of Leo C. Roberts and Cecilia L. Roberts, Michael and Patricia Saylors, South Sound Villa, the Lee Revocable Trust, the Spratt Living Trust, Robert and Mary Ann Thompson, Mary Wightman, and Mark and Janelle Williams.

13. The plaintiffs whose property interests are associated with the Herman J. and Emilie G. Frase Deed (the Frase Deed) are Capital Development Company, E. Paul and Phyllis DeTray, Longnecker Property, Kris and Lauri O'Bannon, and the Crown Beverage Packaging, Inc. Master Trust.

the right of way to protect livestock and the Ellis and Fleetwood Deeds state that the grant is for "One Dollar and other valuable considerations." Neither provision is included in the other Right of Way Deeds.

Ownership of the railroad line transferred hands several times after the initial acquisitions by the TO & GHR and its successor the NPR, by operation of mergers. In 1970, the NPR merged with the Great Northern Railway Company and the Chicago Burlington and Quincy Railroad Company to become the Burlington Northern Railroad Company. Subsequently, the Burlington Northern Railroad Company merged with the Atchison Topeka and Santa Fe Railway Company to become the Burlington Northern and Santa Fe Railway Company (the Burlington Northern).

By 2002, the railroad line was out of service and the Burlington Northern and local authorities began discussing the fate of the line. On November 7, 2002, the City of Lacey wrote to counsel for the Burlington Northern regarding the rail line's suitability for alternative, public use as a recreational trail and its request that, upon abandonment, "the roadbed and structures such as bridges, trestles, and culverts be left intact, to the extent that they are currently installed in this section of rail corridor. In the November 7, 2002 letter the City of Lacey also stated: "The Cities do not object to the removal of track materials, such as rails and ties." On December 2, 2002, the City of Olympia informed the Burlington Northern that it agreed with the statements made by the City of Lacey.

On March 26, 2004, the Cities of Lacey and Olympia filed a "request for both a Public Use Condition and a Trail Use" for the 3.46 mile line at issue in this case. On April 6, 2004, the Burlington Northern filed a Notice of Exemption to abandon 5.80 miles of railroad corridor between milepost 3.27 in Quadlock, Washington and milepost 9.07 in Olympia, Washington. *See BNSF Railway Co.*[14] *—Abandonment Exemption—in Thurston*

*Cnty., WA,* STB Docket No. AB–6 (Sub. No. 410X), 2005 WL 678995 (S.T.B. Mar. 23, 2005). The 3.46 mile right of way was within the railroad corridor between Quadlock, Washington and Olympia, Washington, extending from milepost 3.27 in Quadlock to milepost 6.73 in Olympia. *Id.* After receiving notice that their original request was premature because it was filed before the railroad filed a Notice of Exemption, the Cities filed a new request on April 21, 2004. On April 26, 2004, the Burlington Northern filed a letter with the STB indicating that it did not object to the issuance of a NITU for the 3.46 mile line. On May 24, 2004, the STB issued a NITU for the 3.46 mile section of the line. *See Burlington Northern & Santa Fe Ry. Co.—Abandonment Exemption—in Thurston Cnty., WA,* STB Docket No. AB–6 (Sub. No. 410X), 2004 WL 1153050 (S.T.B. May 19, 2004). The STB's ruling authorized the conversion of the railroad right of way into a recreational trail pursuant to 16 U.S.C. § 1247(d).

On November 22, 2004, the Cities of Lacey and Olympia and the Burlington Northern entered into a Railbanking and Bargain Sale Contract, which indicated:

> pursuant to Section 1247(d) of the National Trails Systems Act, as amended, and the terms and conditions set forth herein, BNSF is willing to sell to Buyer at a substantially reduced purchase price all of BNSF's right, title and interest, subject to any reservations set forth hereinbelow, (i) in a rail corridor and trail-related structures (including land, bridges, culverts, ballast and earthwork)....

The Railbanking and Bargain Sale Contract acknowledged the Burlington Northern's right to reactivate and restore rail service on the property and the possibility that the Burlington Northern's interest in the property, "may be subject to reversion upon abandonment of use for railroad purposes or cessation of interim trail use."

On November 23, 2004, the Burlington Northern notified the STB that it had

---

**14.** In a footnote, the STB decision stated that: "Effective January 20, 2005, The Burlington Northern and Santa Fe Railway Company changed its name to BNSF Railway Company."

*BNSF Railway Co.—Abandonment Exemption—in Thurston Cnty., WA,* STB Docket No. AB–6 (Sub. No. 410X), 2005 WL 678995, at *1 n. 1.

reached a trail use agreement for the 3.46 mile line. *See BNSF Railway Co.—Abandonment Exemption—in Thurston Cnty., WA,* STB Docket No. AB–6 (Sub. No. 410X), 2005 WL 678995 (S.T.B. Mar. 23, 2005). On December 15, 2004, the Burlington Northern notified the STB that it had consummated the abandonment for the remainder of the line between milepost 6.73 and milepost 9.07. *Id.* On January 20, 2005, the Burlington Northern executed quit claim deeds granting its interests in the 3.46 mile railroad line to the Cities of Lacey and Olympia pursuant to the Railbanking and Bargain Sale Contract. The City of Olympia completed a trail on its portion of the right of way on December 1, 2007, and by December 31, 2009, the City of Lacey completed a trail on its portion of the right of way. From the record, it appears the tracks were removed from the rail line.

Thereafter, the plaintiffs filed their claims in the United States Court of Federal Claims, alleging that, following the issuance of the NITU for the 3.46 mile line section of the railroad, "[b]y operation of the Trails Act, the United States took Plaintiffs' property for which it is Constitutionally obligated to pay just compensation," pursuant to the Fifth Amendment to the United States Constitution. Subsequently, the plaintiffs filed a motion to certify this case as a class action, citing to Rule 23 of the Rules of the United States Court of Federal Claims (RCFC). The defendant did not oppose certification, and the motion to certify the class was granted by the court. Subsequently, the plaintiffs filed an amended complaint. On March 2, 2012, this court issued an Order granting a motion by defendant for partial summary judgment, concluding that the deeds which conveyed a fee interest, the Adams/Carpenter Deed, the Hochhaus Deed, the Stewart Deed, and the Weir Deed, could not give rise to takings, and dismissed the claims dependant on those deeds which conveyed a fee interest.[15]

In the pending cross-motions for partial summary judgment, the parties have jointly stipulated to the material facts. The plaintiffs allege that the railroad owned only easements in certain portions of the right of way and seek a determination that interim trail use is outside the scope of those easements. By contrast, defendant alleges that railbanking with interim trail use is within the scope of the easements.

## DISCUSSION

RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) and is similar, both in language and effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a) (2011); Fed.R.Civ.P. 56(a) (2012); *see also Alabama v. North Carolina,* —— U.S. ——, 130 S.Ct. 2295, 2308, 176 L.Ed.2d 1070 (2010); *Hunt v. Cromartie,* 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fujitsu Ltd. v. Netgear Inc.,* 620 F.3d 1321, 1325 (Fed.Cir.), *reh'g denied* (Fed. Cir.2010); *Consol. Coal Co. v. United States,* 615 F.3d 1378, 1380 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 2990, 180 L.Ed.2d 821 (2011); *1st Home Liquidating Trust v. United States,* 581 F.3d 1350, 1355 (Fed.Cir.2009); *Arko Exec. Servs., Inc. v. United States,* 553 F.3d 1375, 1378 (Fed.Cir. 2009); *Casitas Mun. Water Dist. v. United States,* 543 F.3d 1276, 1283 (Fed.Cir.2008), *reh'g and reh'g en banc denied,* 556 F.3d 1329 (Fed.Cir.2009); *Moden v. United States,* 404 F.3d 1335, 1342 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2005); *Am. Pelagic Fishing Co., L.P. v. United States,* 379 F.3d 1363, 1370–71 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2004), *cert. denied,* 545 U.S. 1139, 125 S.Ct. 2963, 162 L.Ed.2d 887 (2005); *Cohen v. United States,* 100 Fed.Cl. 461, 469 (2011); *Boensel v. United States,* 99 Fed.Cl. 607, 610 (2011). A fact is material if it will make a difference in the

---

**15.** No plaintiffs were dismissed from the *Longnecker* class action based on the March 2, 2012 Order because each plaintiff who owns property governed by the fee deeds also has property governed by some other conveyance still at issue in the case.

result of a case under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Thompson v. United States,* 101 Fed.Cl. 416, 426 (2011); *Cohen v. United States,* 100 Fed.Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505; *see also Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257 (Fed.Cir.2001); *Walker v. United States,* 79 Fed.Cl. 685, 692 (2008); *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), *reh'g denied,* 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Schlup v. Delo,* 513 U.S. 298, 332, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir.1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); *Cohen v. United States,* 100 Fed.Cl. at 469–70; *Boensel v. United States,* 99 Fed.Cl. at 611; *Macy Elevator, Inc. v. United States,* 97 Fed.Cl. 708, 717 (2011); *Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States,* 87 Fed.Cl. 113, 126 (2009); *Johnson v. United States,* 49 Fed.Cl. 648, 651 (2001), *aff'd,* 52 Fed.Appx. 507 (Fed. Cir.2002), *published at* 317 F.3d 1331 (Fed. Cir.2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Jay v. Sec'y of Dep't of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir), *reh'g denied and en banc suggestion declined* (Fed.Cir.1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rothe Dev. Corp. v. U.S. Dep't of Def.,* 262 F.3d 1306, 1316 (Fed.Cir.2001); *Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

*Dehne v. United States,* 23 Cl.Ct. 606, 614–15 (1991) (quoting *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626 (Fed.Cir. 1984)), *vacated on other grounds,* 970 F.2d 890 (Fed.Cir.1992) (citation omitted); *see also Metric Constr. Co., Inc. v. United States,* 73 Fed.Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Takeda Pharm. Co. v. Doll,* 561 F.3d 1372, 1375 (Fed.Cir. 2009); *Long Island Sav. Bank, FSB v. United States,* 503 F.3d 1234, 1244 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2007), *cert. denied,* 555 U.S. 812, 129 S.Ct. 38, 172 L.Ed.2d 19 (2008); *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 971 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir.2001), *cert. denied,* 534 U.S. 1109, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002); *Gen. Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1353 (Fed.Cir.1999); *Gonzales–McCaulley Inv. Group, Inc. v. United States,* 101 Fed.Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the

case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *See Ricci v. DeStefano,* 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Yant v. United States,* 588 F.3d 1369, 1371 (Fed.Cir.2009), *cert. denied,* —— U.S. ——, 131 S.Ct. 69, 178 L.Ed.2d 23 (2010); *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,* 272 F.3d 1365, 1369 (Fed.Cir.2001), *reh'g and reh'g en banc denied,* 293 F.3d 1364 (Fed.Cir. 2002), *cert. denied,* 539 U.S. 957, 123 S.Ct. 2637, 156 L.Ed.2d 655 (2003); *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Wanlass v. Fedders Corp.,* 145 F.3d 1461, 1463 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (Fed.Cir.1998); *see also Am. Pelagic Co. v. United States,* 379 F.3d at 1371 (citing *Helifix Ltd. v. Blok–Lok, Ltd.,* 208 F.3d 1339, 1345–46 (Fed.Cir.2000)); *Boensel v. United States,* 99 Fed.Cl. at 611 (" 'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.' " (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Casitas Mun. Water Dist. v. United States,* 543 F.3d at 1283, *Lathan Co. Inc. v. United States,* 20 Cl.Ct. 122, 125 (1990))). "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." *Republic Sav. Bank, F.S.B. v. United States,* 584 F.3d 1369, 1374 (Fed.Cir.2009); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Riley & Ephriam Constr. Co. v. United States,* 408 F.3d 1369, 1371 (Fed.Cir.2005); *Crown Operations Int'l Ltd. v. Solutia Inc.,* 289 F.3d 1367, 1377 (Fed.Cir.), *reh'g denied* (Fed.Cir. 2002); *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.,* 109 F.3d 739, 741 (Fed. Cir.) (quoting *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied and en banc suggestion declined* (Fed.Cir. 1995)), *reh'g denied and en banc suggestion declined* (Fed.Cir.1997); *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1569 (Fed.Cir. 1997); *Dana R. Hodges Trust v. United States,* 101 Fed.Cl. 549, 553 (2011). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *see also Wavetronix LLC v. EIS Elec. Integrated Sys.,* 573 F.3d 1343, 1354 (Fed.Cir.2009); *Long Island Sav. Bank, FSB v. United States,* 503 F.3d at 1244; *Florida Power & Light Co. v. United States,* 375 F.3d 1119, 1124 (Fed.Cir.2004); *Schoell v. Regal Marine Indus., Inc.,* 247 F.3d 1202, 1207 (Fed.Cir. 2001); *Am. Airlines, Inc. v. United States,* 204 F.3d 1103, 1108 (Fed.Cir.2000). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." *Saab Cars USA, Inc. v. United States,* 434 F.3d 1359, 1369 (Fed.Cir.2006).

▪ Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case, and it does not follow that summary judgment should be granted to one side or the other. *See Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)); *see also Marriott Int'l Resorts, L.P. v. United States,* 586 F.3d 962, 968–69 (Fed.Cir.2009); *B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d 587, 593 (6th Cir.2001); *Atl. Richfield Co. v. Farm Credit*

*Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir.2000); *Chevron USA, Inc. v. Cayetano,* 224 F.3d 1030, 1037 n. 5 (9th Cir.2000), *cert. denied,* 532 U.S. 942, 121 S.Ct. 1403, 149 L.Ed.2d 346 (2001); *Bubble Room, Inc. v. United States,* 159 F.3d 553, 561 (Fed.Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other."), *reh'g denied and en banc suggestion declined* (Fed. Cir.1999); *Allstate Ins. Co. v. Occidental Int'l, Inc.,* 140 F.3d 1, 2 (1st Cir.1998); *Massey v. Del Labs., Inc.,* 118 F.3d 1568, 1573 (Fed.Cir.1997); *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *Rogers v. United States,* 90 Fed.Cl. 418, 427 (2009), *subsequent determination,* 93 Fed.Cl. 607 (2010); *Consol. Coal Co. v. United States,* 86 Fed.Cl. 384, 387 (2009), *aff'd,* 615 F.3d 1378 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 2990, 180 L.Ed.2d 821 (2011); *St. Christopher Assocs., L.P. v. United States,* 75 Fed.Cl. 1, 8 (2006), *aff'd,* 511 F.3d 1376 (Fed.Cir.2008); *Reading & Bates Corp. v. United States,* 40 Fed.Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration, or otherwise stated, in favor of the non-moving party. *See First Commerce Corp. v. United States,* 335 F.3d 1373, 1379 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2003); *see also DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1322 (Fed.Cir.2001); *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1338–39 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir.2001), *cert. denied,* 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 886 (2002); *Oswalt v. United States,* 85 Fed.Cl. 153, 158 (2008); *Telenor Satellite Servs., Inc. v. United States,* 71 Fed.Cl. 114, 119 (2006).

■ Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. *See B.F. Goodrich Co. v. United States Filter Corp.,* 245

F.3d at 593; *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir.2000); *Allstate Ins. Co. v. Occidental Int'l, Inc.,* 140 F.3d 1, 2 (1st Cir.1998); *Rogers v. United States,* 90 Fed.Cl. at 427; *Reading & Bates Corp. v. United States,* 40 Fed.Cl. 737, 748 (1998).

"Questions of law are particularly appropriate for summary judgment." *Oenga v. United States,* 91 Fed.Cl. 629, 634 (2010) (citing *Dana Corp. v. United States,* 174 F.3d 1344, 1347 (Fed.Cir.1999) ("Summary judgment was appropriate here [in *Dana Corp.*] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")). For the purposes of resolving the cross-motions for partial summary judgment currently before the court, the material facts are not in dispute. Therefore, the issues presented may be resolved by summary judgment.

**The Right of Way Deeds**

In their cross-motion for partial summary judgment, the plaintiffs seek "a threshold ruling" that the easements granted in the Right of Way Deeds "were easements limited to railroad purposes, and that recreational trail use exceeded the scope of such easements," resulting in the defendant's liability for takings, "absent other considerations specific to individual Plaintiffs' properties." By contrast, the defendant argues that, with respect to the properties governed by the Right of Way Deeds which granted easements, the plaintiffs cannot "show that railbanking and interim trail use exceed the scope of the easements at issue under Washington law."

■ Under the Tucker Act, the United States Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000.00 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1)

(2006). Therefore, "a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *E. Enters. v. Apfel*, 524 U.S. 498, 520, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016–19, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)); *see also Acceptance Ins. Cos. v. United States*, 503 F.3d 1328, 1336 (Fed.Cir.2007); *Morris v. United States*, 392 F.3d 1372, 1375 (Fed.Cir. 2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."). The United States Supreme Court has declared: "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [United States Court of Federal Claims] to hear and determine." *Preseault v. Interstate Commerce Comm'n*,[16] 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (quoting *United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)); *see also Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1368 (Fed.Cir.2005); *Narramore v. United States*, 960 F.2d 1048, 1052 (Fed.Cir.1992); *Perry v. United States*, 28 Fed.Cl. 82, 84 (1993).

The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Palazzolo v. Rhode Island*, 533 U.S. 606, 618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)); *see also Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123–24, 98 S.Ct. 2646, 57 L.Ed.2d 631, *reh'g denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); *E. Enters. v. Apfel*, 524 U.S. at 522, 118 S.Ct. 2131; *Rose Acre Farms, Inc. v. United States*, 559 F.3d 1260, 1266 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 1501, 176 L.Ed.2d 109 (2010); *Janowsky v. United States*, 133 F.3d 888, 892 (Fed.Cir.1998); *Resource Invs., Inc. v. United States*, 85 Fed.Cl. 447, 469–70 (2009); *Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. (13 Wall.) 166, 179, 20 L.Ed. 557 (1871) (citing to principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified.").

To succeed under the Fifth Amendment Takings Clause, a plaintiff must show that the government took a private property interest for public use without just compensation. *See Adams v. United States*, 391 F.3d 1212, 1218 (Fed.Cir.2004), *cert. denied*, 546 U.S. 811, 126 S.Ct. 330, 163 L.Ed.2d 43 (2005); *Arbelaez v. United States*, 94 Fed.Cl.

---

**16.** *Preseault v. Interstate Commerce Commission*, 494 U.S. 1, 110 S.Ct. 914, is a 1990 United States Supreme Court decision and is sometimes referred to as *Preseault I*. In *Preseault I*, the Supreme Court concluded that although the Trails Act represented a valid exercise of Congressional power under the Commerce Clause of the United States Constitution, when railroad rights of way are converted to interim public trail use under the Trails Act, the Trails Act taking of private property cannot occur without just compensation. *See generally Preseault I*, 494 U.S. 1, 110 S.Ct. 914. Subsequently, in 1996, the United States Court of Appeals for the Federal Circuit issued a decision also involving the Preseaults, *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir.1996), sometimes referred to as *Preseault II*.

As explained by the Federal Circuit, "[t]he Preseaults own a fee simple interest in a tract of land near the shore of Lake Champlain in Burlington, Vermont, on which they have a home. This tract of land is made up of several previously separate properties, the identities of which date back to before the turn of the century. The dispute centers on three parcels within this tract, areas over which the original railroad right-of-way ran." *Id.* at 1531. In *Preseault II*, the Federal Circuit concluded that "[w]hen state-defined property rights are destroyed by the Federal Government's preemptive power in circumstances such as those here before us, the owner of those rights is due just compensation." *Preseault II*, 100 F.3d at 1552.

753, 762 (2010); *Gahagan v. United States,* 72 Fed.Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." *Huntleigh USA Corp. v. United States,* 525 F.3d 1370, 1377–78 (Fed.Cir.), *cert. denied,* 555 U.S. 1045, 129 S.Ct. 626, 172 L.Ed.2d 608 (2008).

■ The Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. *See Klamath Irr. Dist. v. United States,* 635 F.3d 505, 511 (Fed.Cir.2011); *Am. Pelagic Fishing Co. v. United States,* 379 F.3d at 1372 (citing *M & J Coal Co. v. United States,* 47 F.3d 1148, 1153–54 (Fed.Cir.), *cert. denied,* 516 U.S. 808, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995)). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings. Then, the court must determine whether the government action is a " 'compensable taking of that property interest.' " *Huntleigh USA Corp. v. United States,* 525 F.3d at 1377 (quoting *Am. Pelagic Fishing Co., L.P. v. United States,* 379 F.3d at 1372).

■ A takings plaintiff must have a legally cognizable property interest, such as the right of possession, use or disposal of the property. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (citing *United States v. Gen. Motors Corp.,* 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945)); *CRV Enters., Inc. v. United States,* 626 F.3d 1241, 1249 (Fed.Cir.2010), *cert. denied,* — U.S. ——, 131 S.Ct. 2459, 179 L.Ed.2d 1211 (2011); *Karuk Tribe of Cal. v. Ammon,* 209 F.3d 1366, 1374–75 (Fed.Cir.), *reh'g denied and en banc suggestion denied* (Fed.Cir. 2000), *cert. denied,* 532 U.S. 941, 121 S.Ct. 1402, 149 L.Ed.2d 345 (2001). " 'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.' " *Am. Pelagic Fishing Co. v. United States,* 379 F.3d at 1372 (quoting *Wyatt v. United States,* 271 F.3d 1090, 1096 (Fed.Cir.2001), *cert. denied* 535 U.S. 1077, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002) and citing *Cavin v. United States,* 956 F.2d 1131, 1134 (Fed.Cir.1992)). Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." *Am. Pelagic Fishing Co. v. United States,* 379 F.3d at 1372 (citing *Maritrans Inc. v. United States,* 342 F.3d 1344, 1352 (Fed.Cir.2003) and *M & J Coal Co. v. United States,* 47 F.3d at 1154). The court does not address the second step "without first identifying a cognizable property interest." *Air Pegasus of D.C., Inc. v. United States,* 424 F.3d 1206, 1213 (Fed.Cir.) (citing *Am. Pelagic Fishing Co. v. United States,* 379 F.3d at 1381 and *Conti v. United States,* 291 F.3d 1334, 1340 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003)), *reh'g denied and reh'g en banc denied* (Fed.Cir.2005). Only if there is to be a next step, "after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest." *Huntleigh USA Corp. v. United States,* 525 F.3d at 1378 (quoting *Am. Pelagic Fishing Co. v. United States,* 379 F.3d at 1372).

■ If a plaintiff has a valid property interest, the government takes that interest by destroying, physically occupying, or excessively regulating it for a public purpose. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,* — U.S. ——, 130 S.Ct. 2592, 2601, 177 L.Ed.2d 184 (2010); *Boyle v. United States,* 200 F.3d 1369, 1374 (Fed.Cir. 2000). " 'When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof.' " *Brown v. Legal Found. of Wash.,* 538 U.S. 216, 233, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003) (quoting *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 321–23, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002)) (citations omitted); *see also John R. Sand & Gravel Co. v. United States,* 457 F.3d 1345, 1357 (Fed.Cir.) ("[A] permanent physical occupation by the government is a per se physical taking requiring compensation under the Fifth Amendment because it destroys, among oth-

er rights, a property owner's right to exclude."), *reh'g en banc denied* (Fed.Cir.2006), *aff'd*, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). The United States Supreme Court has indicated that when "deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole...." *Penn Central Transp. Co. v. City of New York*, 438 U.S. at 130–31, 98 S.Ct. 2646. If a plaintiff does possess a property interest, the court decides if the "property has been deprived or abridged sufficiently to qualify as 'taken.'" *See Northwest La. Fish & Game Pres. Comm'n v. United States*, 574 F.3d 1386, 1390 (Fed.Cir.2009) (quoting *Members of Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323, 1330 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2005), *cert. denied*, 548 U.S. 904, 126 S.Ct. 2967, 165 L.Ed.2d 951 (2006)), *cert. denied*, —— U.S. ——, 130 S.Ct. 1072, 175 L.Ed.2d 886 (2010); *see also Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 854 (Fed.Cir.2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 2402, 176 L.Ed.2d 922 (2010); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir. 2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Wyatt v. United States*, 271 F.3d at 1099–1100; *Karuk Tribe of Cal. v. Ammon*, 209 F.3d at 1374.

The STB has authority to regulate most railroad lines in the United States. *See* 49 U.S.C. § 702 (2006). A railroad seeking to abandon any part of its railroad lines must either (1) file an application to abandon or (2) file a notice of exemption to abandon the line. *See* 49 U.S.C. § 10903 (2006); *see also* 49 C.F.R. § 1152.50 (2012). "If the STB approves a standard abandonment application or grants an exemption and the railroad ceases operation, the STB relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect." *Caldwell v. United States*, 391 F.3d 1226, 1228–29 (Fed.

Cir.2004) (citing *Preseault I*, 494 U.S. at 6–8, 110 S.Ct. 914), *reh'g en banc denied* (Fed. Cir.), *cert. denied*, 546 U.S. 826, 126 S.Ct. 366, 163 L.Ed.2d 72 (2005).

Alternatively, by operation of the Trails Act, the STB may issue a NITU, "suspending exemption proceedings for 180 days to allow a third party to enter into an agreement with the railroad to use the right-of-way as a recreational trail." *Barclay v. United States*, 443 F.3d 1368, 1371 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.2006), *cert. denied*, 549 U.S. 1209, 127 S.Ct. 1328, 167 L.Ed.2d 81 (2007). Section 8(d) of the Trails Act, "allows a railroad to negotiate with a state, municipal, or private group ('the trail operator') to assume financial responsibility for operating the railroad right of way as a recreational trail." *See Bright v. United States*, 603 F.3d 1273, 1275 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2010) (citing *Caldwell v. United States*, 391 F.3d at 1229). If the railroad and an authorized trail provider [17] reach an agreement, the NITU extends indefinitely, and the corridor is railbanked, with interim trail use permitted. *See* 49 C.F.R. § 1152.29(d)(1)–(2) (current through April 19, 2012) ("The NITU will indicate that interim trail use is subject to future restoration of rail service ... [t]he NITU will also provide that, if the user intends to terminate trail use, it must send the [STB] a copy of the NITU and request that it be vacated on a specific date."); *see also Caldwell v. United States*, 57 Fed.Cl. 193, 194 (2003) (quoting *Neb. Trails Council v. Surface Transp. Bd.*, 120 F.3d 901, 903 n. 1 (8th Cir.1997)) ("The term railbanking refers to the 'preservation of railroad corridor for future rail use,' while making the corridor available for other activities."), *aff'd*, 391 F.3d 1226 (Fed.Cir.2004), *reh'g en banc denied* (Fed.Cir.), *cert. denied*, 546 U.S. 826, 126 S.Ct. 366, 163 L.Ed.2d 72 (2005). When the NITU extends indefinitely and the corridor is railbanked, the STB retains jurisdiction and abandonment of the rail corridor is blocked. *See* 16 U.S.C. § 1247(d) ("[I]n the

17. The Trails Act indicates that a trail provider may be "a State, political subdivision, or qualified private organization [that] is prepared to assume full responsibility for management of such rights-of-way and for any legal liability aris-

ing out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way." 16 U.S.C. § 1247(d).

case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.").

■ As described by the United States Court of Appeals for the Federal Circuit:

Thus, section 8(g) of the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment-property laws that would "result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." Rail Abandonments–Use of Rights–of–Way as Trails, Ex Parte No. 274 (Sub No.13), 2 I.C.C.2d 591, 1986 WL 68617 (1986). A Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail. *See Preseault II,* 100 F.3d at 1552; *see also Toews [v. United States],* 376 F.3d at 1376.

*Caldwell v. United States,* 391 F.3d at 1229.

■ The Federal Circuit has established a three-part inquiry to determine takings liability in cases involving the conversion of railroad rights of way to a recreational trail via 16 U.S.C. § 1247(d) of the Trails Act:

(1) who owned the strips of land involved, specifically did the Railroad ... acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault II,* 100 F.3d at 1533. Phrased differently, the Federal Circuit more recently indicated:

the determinative issues for takings liability are (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

*Ellamae Phillips Co. v. United States,* 564 F.3d 1367, 1373 (Fed.Cir.2009) (citing *Preseault II,* 100 F.3d at 1533).

As indicated above, the parties have stipulated that the Right of Way Deeds, "conveyed an easement to the acquiring railroad," thereby addressing the first part of the Federal Circuit's rails to trails takings inquiry.[18] The court, therefore, turns to the second part of the rails to trails takings inquiry, the scope of the easements.

**Scope of the Easements for the Right of Way Deeds**

The Right of Way Deed from Joseph B. and Almeda G. Rowe to the TO & GHR, dated August 27, 1890, is representative of the Right of Way Deeds. The Rowe Deed reads:

This Indenture made and entered into this twenty seventh day of August, 1890, by and between Joseph B. Rowe and Almeda G. Rowe, his wife, of the County of Thurston in the State of Washington, party of the first part, and The Tacoma, Olympia and Gray's Harbor Railroad Company a corporation duly incorporated and existing under the laws of the State of Washington, party of the second part, Witnesseth, That

---

**18.** As noted above in the first footnote, one ordinance issued by the City of Olympia and one deed from the NPR to the TO & GHR were not stipulated to by the parties and are not the subject of this opinion.

for and in consideration of the sum Seventy five Dollars in lawful money of the United States, to said party of the first part in hand paid by said party of the second part, the receipt whereof is hereby acknowledged, the said parties of the first part have granted, and hereby do grant to the said party of the second part, its successors and assigns, a right of way One hundred feet in width for the construction, operation and maintenance of said railroad company's proposed line of railroad on, over, across and through the following described tracts or parcels of land situated in Thurston County, State of Washington, as follows, to wit: A portion of the Lyrus Hines donation claim in sections fifteen (15) and twenty two (22) in township eighteen (18) north range One (1) west more particularly described as follows: commencing at a stake in the center of the Olympia and Steilacoom road which stake is also on the west boundary of the said Hines donation claim and running thence due south forty (40) rods to a stake, thence at right angles east forty-two (42) rods to a stake on the bank of a small pond known as Goose Pond; thence due north fifty two and one fourth (52 1/4) rods, be the same more or less to the center of the foresaid road; thence southwesterly following the center of said road forty four and three fourths (44 3/4) be the same more or less to the place of beginning containing sixteen and sixty-five one hundredths (16 65/100) acres more or less, and said parties of the first part have granted, bargained and sold and by these presents do grant, bargain, sell and convey and warrant to said party of the second part, and to its successors and assigns, as and for such right of way, a strip of land fifty feet in width on each side of the centre line of said proposed railroad as heretofore surveyed and now located and staked out and here-

after to be[19] constructed, operated and maintained upon, across, over and through the land hereinbefore described. To Have and to Hold the said strip of land to the said party of the second part, its successors and assigns, so long as the same shall be used for railroad purposes. Witness our hands and seals this twenty-seventh day of August, 1890.

As indicated above, although differences exist among the grantors' names, the dates the deeds were executed, the amount of consideration paid, and the description of the land, the Patton Deed, the Ellis Deed, the Fleetwood Deed, the Rowe Deed, the Carpenter Deed, the Adams Deed, the Chambers Deed, and the Frase Deed contain nearly identical granting, habendum, and reverter clauses. The Right of Way Deeds granting clauses all state:

[T]he said parties of the first part have granted, and hereby do grant to the said party of the second part, its successors and assigns, a right of way One hundred feet in width for the construction, operation and maintenance of said railroad company's proposed line of railroad on, over, across and through the following described tracts or parcels of land

. . .

[composed of] a strip of land fifty feet in width, on each side of the centre line of said proposed railroad as heretofore surveyed and now located and staked out and hereafter to be constructed, operated and maintained upon, across, over and through the land hereinbefore described.

Additionally, all of the Right of Way Deeds have the same habendum and reverter clauses: "To Have and to Hold the said strip of land to the said party of the second part, its successors and assigns so long as the same shall be used for railroad purposes."[20]    As

---

19. The Rowe Deed states "hereafter to the constructed," whereas the other Right of Way Deeds all state "hereafter to be constructed," an apparent mistake in the Rowe Deed.

20. As noted above, the only differences between the granting, habendum, and reverter clauses in the Right of Way Deeds occur in spelling and punctuation, except that the Fleetwood Deed does not state the width of the right of way and

the Adams Deed grants "a right of way One hundred and fifty feet in width," comprised of "a strip of land Fifty feet in width on such each side of the center line . . . [and] also a strip fifty feet wide on the south side of and adjoining such strip already described." Additionally, the Patton Deed contains an additional stipulation that the TO & GHR build a fence on both sides of the right of way to protect livestock, and the Ellis

the Right of Way Deeds are essentially the same, the Right of Way Deeds will be examined together.

The United States Court of Appeals for the Federal Circuit has indicated that "[a] Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail." *Caldwell v. United States*, 391 F.3d at 1229 (citing *Preseault II*, 100 F.3d at 1533). The Federal Circuit also has stated, "[i]t is settled law that a Fifth Amendment taking occurs in Rails–to–Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed.Cir. 2010), *reh'g and reh'g en banc denied*, 646 F.3d 910 (Fed.Cir.2011) (citing *Ellamae Phillips Co. v. United States*, 564 F.3d at 1373); *see also Jenkins v. United States*, 102 Fed. Cl. 598, 605 (2011); *Dana R. Hodges Trust v. United States*, 101 Fed.Cl. at 551. In *Toews v. United States*, 376 F.3d 1371 (Fed.Cir.), *reh'g denied* (Fed.Cir.2004), the Federal Circuit noted that "[i]t is elementary law that if the Government uses . . . an existing railroad easement for purposes and in a manner not allowed by the terms of the grant of the easement, the Government has taken the landowner's property for the new use. The consent of the railroad to the new use does not change the equation-the railroad cannot give what it does not have." *Id.* at 1376.

■ There is no dispute that Washington State law controls to determine the scope of the easements for the Right of Way Deeds. The United States Court of Appeals for the Federal Circuit, interpreting a takings claim for a railroad right of way, was clear that "state law generally creates the property interest in a railroad right-of-way," *Barclay v. United States*, 443 F.3d at 1374 (citing *Preseault I*, 494 U.S. at 8, 16, 110 S.Ct. 914), and in a footnote on the same page repeated, "[i]n *Toews v. United States*, 376 F.3d 1371 (Fed.Cir.2004), we reiterated that state law

controls the basic issue of whether trail use is beyond the scope of the right-of-way." *Barclay v. United States*, 443 F.3d at 1374 n. 4. "The nature of the interest conveyed is determined according to the law of the state where the conveyance occurred. 'State law creates and defines the scope of the reversionary or other real property interests affected by the ICC's [Interstate Commerce Commission] action pursuant to Section 208 of the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d).'" *Chevy Chase Land Co. of Montgomery Cnty. v. United States*, 37 Fed.Cl. 545, 565 (1997) (quoting *Preseault I*, 494 U.S. at 20, 110 S.Ct. 914 (O'Connor, J., concurring) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. at 1001, 104 S.Ct. 2862)), *aff'd*, 230 F.3d 1375 (Fed.Cir.1999), *reh'g and reh'g en banc denied* (Fed.Cir.), *cert. denied*, 531 U.S. 957, 121 S.Ct. 380, 148 L.Ed.2d 293 (2000); *see also Whispell Foreign Cars, Inc. v. United States*, 97 Fed.Cl. 324, 331 ("Whether an individual has a compensable private property interest is determined by state law."), *amended after recons. in part*, 100 Fed.Cl. 529 (2011).

While *Chevy Chase Land Co. of Montgomery County v. United States* and *Preseault I* specifically addressed the application of state law to be applied in rails to trails cases, the United States Supreme Court has made similar pronouncements about state law governing how determinations are made regarding property conveyances. For example, in *Ruckelshaus v. Monsanto Co.*, 467 U.S. at 1001, 104 S.Ct. 2862, the Supreme Court stated, "we are mindful of the basic axiom that ' "[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." ' " (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972))) (omission in original). In *Oregon ex rel. State Land Bd.*

and Fleetwood Deeds state that the grant is for "One Dollar and other valuable considerations," with neither provision included in the other

Right of Way Deeds. None of these differences are material or prevent the court from analyzing the Right of Way Deeds together.

*v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977), the United States Supreme Court stated that, "[u]nder our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States." *Id.* at 378, 97 S.Ct. 582; *see also Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 155, 64 S.Ct. 474, 88 L.Ed. 635 (1944) ("The great body of law in this country which controls acquisition, transmission, and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state."). The Federal Circuit also has directed that state law determines whether trail use exceeds the scope of the easement. *See generally Toews v. United States*, 376 F.3d 1371; *see also Preseault II*, 100 F.3d at 1541–42.

■■■ Under Washington law, when an easement terminates because it is used for a purpose outside of the scope of the grant, "the land is discharged of the burden of the easement and the right to possession reverts to the original landowner. . . ." *Roeder Co. v. Burlington Northern, Inc.*, 105 Wash.2d 567, 716 P.2d 855, 859, *recons. denied* (Wash. 1986) (footnote omitted); *see also London v. City of Seattle*, 93 Wash.2d 657, 611 P.2d 781, 787 (1980). The State of Washington Supreme Court in *Morsbach v. Thurston County*, 152 Wash. 562, 278 P. 686 (1929) held that a " 'grant of a right of way to a railroad company is the grant of an easement merely, and the fee remains in the grantor.' " *Id.* at 690 (quoting 1 Thompson on Real Property § 420); *see also Washington Sec. and Inv. Corp. v. Horse Heaven Heights, Inc.*, 132 Wash.App. 188, 130 P.3d 880, 883 ("[I]f the right-of-way was granted to the railroad as an easement, then the [plaintiffs] would hold title to the land underlying the right-of-way and the railroad would merely maintain a right of use so long as it continued to operate its railway."), *review denied*, 158 Wash.2d 1023, 149 P.3d 379 (2006).

■■■ According to the State of Washington Supreme Court, under Washington law, "when construing a deed, the intent of the parties is of paramount importance and the court's duty to ascertain and enforce." *Brown v. State*, 130 Wash.2d 430, 924 P.2d 908, 911, *recons. denied* (Wash. 1996) (footnote omitted); *see also Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wash.2d 253, 126 P.3d 16, 25–26 (2006); *Wash. State Grange v. Brandt*, 136 Wash.App. 138, 148 P.3d 1069, 1073 (2006) ("Generally, when construing a deed, the intent of the parties is of paramount importance and courts must ascertain and enforce such intent."), *review denied*, 161 Wash.2d 1024, 171 P.3d 1054 (2007). The State of Washington Supreme Court also has concluded that, "[t]he interpretation of an easement is a mixed question of law and fact. What the original parties intended is a question of fact and the legal consequence of that intent is a question of law." *Sunnyside Valley Irr. Dist. v. Dickie*, 149 Wash.2d 873, 73 P.3d 369, 372 (2003) (citing *Veach v. Culp*, 92 Wash.2d 570, 599 P.2d 526, 527 (1979)). The *Sunnyside Valley* court also offered standard contract interpretation guidance as applied to railroad deeds, stating:

> The intent of the original parties to an easement is determined from the deed as a whole. *Zobrist v. Culp*, 95 Wash.2d 556, 627 P.2d 1308[, 1310] (1981). If the plain language is unambiguous, extrinsic evidence will not be considered. *City of Seattle v. Nazarenus*, 60 Wash.2d 657, 374 P.2d 1014[, 1019–20] (1962). If ambiguity exists, extrinsic evidence is allowed to show the intentions of the original parties, the circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct or admissions.

*Sunnyside Valley Irr. Dist. v. Dickie*, 73 P.3d at 372 (other citations omitted); *see also City of Seattle v. Nazarenus*, 60 Wash.2d 657, 374 P.2d 1014, 1019–20 (1962) (" 'Where the language is unambiguous, other matters may not be considered; but where the language is ambiguous the court may consider the situation of the property and of the parties, and the surrounding circumstances at the time the instrument was executed, and the practical construction of the instrument given by the parties by their conduct or

admissions.'") (quoting 28 C.J.S. Easements § 26, p. 680).[21]

██ The State of Washington Supreme Court, however, has applied the "context rule" to interpretation of railroad deeds. As indicated in *Harris v. Ski Park Farms, Inc.*, "[t]his court has adopted the 'context rule' which succinctly stated is that 'extrinsic evidence is admissible as to the entire circumstances under which [a] contract [is] made, as an aid in ascertaining the parties' intent,' specifically adopting the Restatement (Second) of Contracts §§ 212, 214(c) (1981)." *Harris v. Ski Park Farms, Inc.*, 120 Wash.2d 727, 844 P.2d 1006, 1014, *recons. denied* (Wash. 1993), *cert. denied*, 510 U.S. 1047, 114 S.Ct. 697, 126 L.Ed.2d 664 (1994) (footnote omitted) (omissions in original); *see also Brown v. State*, 924 P.2d at 912 ("In addition to the language of the deed, we will also look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties."). Citing to *Brown v. State* and *Harris v. Ski Park Farms, Inc.*, the State of Washington Court of Appeals in *Roeder Co. v. K & E Moving & Storage Co., Inc.*, noted that "the Supreme Court has recently ruled that, in light of Washington's adoption of the 'context rule' for contracts, courts may look to extrinsic evidence *along with* the deed itself to determine the parties' intent." *Roeder Co. v. K & E Moving & Storage Co., Inc.*, 102 Wash.App. 49, 4 P.3d 839, 841 n. 6 (citing *Brown v. State*, 924 P.2d at 912 and *Harris v. Ski Park Farms, Inc.*, 844 P.2d at 1014), *recons. denied*, (Wash.Ct.App. 2000), *review denied*, 142 Wash.2d 1017, 16 P.3d 1264 (2001) (emphasis in original). To look first to the language of the source deeds, but then also to refer to the context of the deeds at their time of execution is reasonable, given their age and the sometimes stilted language used. The meaning of the source deeds is not always clear to a reader in some instances more than 100 years later, creating possible ambiguities.

The plaintiffs argue that "the issuance of the NITU authorizing conversion of the railroad right-of-way for use as a recreational trail is beyond the scope of the easements." The plaintiffs allege that use as a recreational trail is not within the permissible uses of the easements granted in the Right of Way Deeds, and, therefore, takings by the government result. At oral argument, the defendant admitted that the easements were for railroad purposes, stating, "[t]he government doesn't dispute that these easements are for railroad purposes," but indicated that the disagreement with the parties as to scope stems instead from what is encompassed within the terminology of "railroad purposes."

██ All of the Right of Way Deeds specifically state that "the said parties of the first part have granted, and hereby do grant to the said party of the second part, its successors and assigns, a right of way One hundred feet in width for the construction, operation and maintenance of said railroad company's proposed line of railroad on, over, across and through the following described tracts or parcels of land ... [of] said proposed railroad as heretofore surveyed and now located and staked out and hereafter to be constructed, operated and maintained upon, across, over and through the land hereinbefore described." The habendum clauses indicate that the property is "To Have and to Hold ... so long as the same shall be used for railroad purposes." Therefore, plaintiffs argue, the Right of Way Deeds "are limited by their terms to railroad purposes." The language chosen by the source deed grantors in the Right of Way Deeds when granting the easements to the TO & GHR is specific and clear. The intention of the easements was to permit the railroad access for "construction, operation and maintenance ... so

---

21. The current version of the Corpus Juris Secundum on Easements quoted by the State of Washington Supreme Court is at section 64 of the Corpus Juris Secundum on Easements. *See* 28A C.J.S. § 64 (2012) ("Where the language is unambiguous, other matters may not be considered, as an easement specific in its terms is decisive of its limit. However, where the language is ambiguous the court may consider the situation of the property and of the parties, and the surrounding circumstances at the time the instrument was executed, and the practical construction of the instrument given by the parties by their conduct or admissions.") (footnotes omitted).

long as the same shall be used for railroad purposes."

Moreover, there is no dispute that a railroad line was actually constructed and was operational on the impacted properties. For example, as the defendant states, "[t]he rail line was, at least in part, constructed and in operation by 1894, because the March 20, 1894, deed from William A. Stewart references 'the center line of the Grantee's railroad as the same is now constructed and operated,'" and further states that "[n]ot all of the corridor was acquired before the rail line had been constructed. The grants in fee by warranty deeds from William A. Stewart, dated March 20, 1894, and from Charles and Gertrude Hochhaus, dated February 27, 1911, both indicate that the railroad has been 'constructed and operated.'"

The plain language limitation in all the Right of Way Deeds, that the "said strip of land to the said party of the second part, its successors and assigns so long as the same shall be used for railroad purposes," does not allow for use as a recreational trail. A recreational trail, for walking, hiking, and biking is inconsistent with the easements granted specifically for "railroad purposes." As the United States Court of Appeals for the Federal Circuit in *Toews v. United States* stated:

> [I]t appears beyond cavil that use of these [railroad] easements for a recreational trail—for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway—is not the same use made by a railroad, involving tracks, depots, and the running of trains. The different uses create different burdens. In the one case there was an occasional train passing through.... In the other, individuals or groups use the property, some passing along the trail, others pausing to engage in activities for short or long periods of time.

*Toews v. United States*, 376 F.3d at 1376. Further, as stated by the *Toews* court, "[s]ome might think it better to have people strolling on one's property than to have a freight train rumbling through. But that is not the point. The landowner's grant authorized one set of uses, not the other." *Id.*

at 1376–77; *see also Thompson v. United States*, 101 Fed.Cl. at 433 ("In this case, by contrast, conversion of the Railroad easements into a public recreational trail transforms the nature of the easement and is substantially different from the original use."). A Judge of the United States Court of Federal Claims also wrote:

> A railroad, or a highway for public travel, has the primary purpose of transporting goods and people. The purpose of a recreational trail is fundamentally different. A bicycle trail does not exist to transport people but rather to allow the public to engage in recreation and enjoy the outdoors. The two uses are distinct and an easement for a recreational trail is not like in kind to an easement for railroads.

*Capreal, Inc. v. United States*, 99 Fed.Cl. 133, 145 (2011).

Although the plain language of the Right of Way Deeds indicates that the Right of Way Deeds granted easements for the construction, operation and maintenance of the rail line and for railroad purposes, the State of Washington Supreme Court has instructed courts to look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties. As noted above, in *Harris v. Ski Park Farms, Inc.*, 844 P.2d at 1014, the State of Washington Supreme Court rejected the requirement that ambiguity in the contract language must exist before allowing evidence of the "surrounding circumstance," in the case of railroad deeds. The *Harris* court instead "adopted the 'context rule' which succinctly stated is that 'extrinsic evidence is admissible as to the entire circumstances under which [a] contract [is] made, as an aid in ascertaining the parties' intent,' specifically adopting the Restatement (Second) of Contracts §§ 212, 214(c) (1981)." *Id.* (footnote omitted) (omissions in original); *see also Brown v. State*, 924 P.2d at 912 ("In addition to the language of the deed, we will also look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties."); *Roeder Co. v. K & E Moving & Storage Co., Inc.*, 4 P.3d at 841 n. 6 (noting that Washington State courts should "consider both the deed and the extrinsic evidence.") (citing *Brown v. State*, 924

P.2d at 912 and *Harris v. Ski Park Farms, Inc.*, 844 P.2d at 1014). In the *Longnecker* class action, however, the limited record before this court does not provide any contextual information relevant to the intent of the parties at the time of the signing of the Right of Way Deeds to suggest that the grantors conveyed anything other than easements which were intended to assist with the construction, operation and maintenance of the railway line so long as the easements were used for railroad purposes. Therefore, the court relies on the plain language of the conveyances that the scope of the easements was limited to the construction, operation and maintenance of the railway line, "so long as the same shall be used for railroad purposes."

Plaintiffs rely on *Lawson v. State*, 107 Wash.2d 444, 730 P.2d 1308 (1986), to argue that issuance of the NITU authorizing conversion of the railroad line for use as a public recreational trail under the Trails Act is beyond the original scope of the easements.[22] According to plaintiffs, the issue "virtually begins and ends with a discussion of *Lawson v. State*, a State of Washington Supreme Court case that is directly on point and was discussed and quoted with approval by the Federal Circuit in the seminal case of *Preseault II*." In *Preseault II*, as discussed above, the Federal Circuit established a three-part takings analysis. The Federal Circuit endorsed the reasoning in *Lawson*, noting the similarity of the *Lawson* case to the case under consideration in *Preseault II*. The *Preseault II* court discussed the *Lawson* case at length and stated: "[m]ost state courts that have been faced with the question of whether conversion to a nature trail falls within the scope of an original railroad easement have held that it does not. *Lawson v. State*, 107 Wash.2d 444, 730 P.2d 1308 (1986) (in banc), is an example of a case practically on all fours with the case before us." *Preseault II*, 100 F.3d at 1543. The Federal Circuit proceeded to provide an in-depth summation of the *Lawson* case as follows:

The Burlington Northern Railroad Company petitioned the ICC[23] for permission to discontinue rail service over a certain right-of-way. King County requested the ICC to determine that the right-of-way was suitable as a public recreational trail, and to require that it be offered for sale for public purposes. The ICC did so under its Rails–To–Trails authority, and King County acquired the right-of-way from the Railroad.

The property owners who owned the underlying fee estates sued in Washington State court for a declaratory judgment that this was an unlawful taking without just compensation. The trial court held for the County. The Washington Supreme Court, *in banc*, reversed. The Court stated the common law rule to be that when a deed conveys a right-of-way for railroad purposes only, upon abandonment by the railroad of the right-of-way the land over which the right-of-way passes "reverts" to the reversionary interest holder (the owner of the fee estate) free of the easement.

The [*Lawson*] court then stated:

In addition to outright abandonment of a right of way, there may be a change in

---

**22.** Plaintiffs also cite to *King County v. Squire Investment Co.*, 59 Wash.App. 888, 801 P.2d 1022 (1990), *review denied*, 116 Wash.2d 1021, 811 P.2d 219 (1991) for support that a public recreational trail use is beyond the scope of the easements. The discussion regarding the scope of the easement in *Squire Investment Co.*, however, is dicta and from the State of Washington Court of Appeals. In *Squire Investment Co.*, the court determined that the deed at issue conveyed an easement to the railroad which terminated when the railroad abandoned the line with Interstate Commerce Commission approval. This precluded any need by the State of Washington Court of Appeals in *Squire Investment Co.* to address the scope of the easement. *See id.* at 1025 ("King County contends, however, that its use of the right-of-way as a recreational trail is within the

scope of the interest conveyed to the railroad and, hence, it was not abandoned. The County's argument is without merit. Burlington Northern formally abandoned the right-of-way on July 29, 1985 [the date the ICC issued a Certificate of Abandonment]. The easement was extinguished at that moment and its interest reverted to the Squires' heirs. Burlington Northern had no interest to convey to King County for use as a railroad much less as a trail.") (footnotes omitted).

**23.** At the time of the *Preseault II* case, the Interstate Commerce Commission (ICC) was the government entity responsible for railroad regulation.

use of the right of way which is inconsistent with the purpose for which the right of way was granted. Where the particular use of an easement for the purpose for which it was established ceases, the land is discharged of the burden of the easement and right to possession reverts to the original land owner or to that landowner's successor in interest.

*Id.,* 730 P.2d at 1312. The [*Lawson*] court went on to hold that a hiking and biking trail is not encompassed within a grant of an easement for railroad purposes, citing cases from Illinois and Wisconsin, and concluded that "[a]pplying common law principles, we hold that a change in use from 'rails to trails' constitutes abandonment of an easement which was granted for railroad purposes only.[24] At common law, therefore, the right of way would automatically revert to the reversionary interest holders." *Id.,* 730 P.2d at 1313. The court went on to hold that a state statute which purported to prevent the ripening of the reversionary interest upon abandonment was unconstitutional as applied to the vested property rights of the plaintiffs "insofar as it purports to authorize King County to acquire without payment of just compensation existing reversionary interests which follow easements for railroad purposes only." *Id.,* 730 P.2d at 1316.

The Court thus concluded that "King County cannot acquire the [ ] right of way from Burlington Northern without payment of just compensation to the reversionary interest holders. If the County takes this right of way and commences to build a recreation trail, it does so in violation of the constitution." *Id.*

*Preseault II,* 100 F.3d at 1543–44 (footnote omitted, omissions in original).

In response, defendant states that "[i]t is no surprise that, as Plaintiffs note in their brief, the Federal Circuit found *Lawson* to be 'practically on all fours' with *Preseault II*." Despite extensive discussion and reliance on *Lawson* by the United States Court of Appeals for the Federal Circuit in *Preseault II,* defendant argues that, although the Federal Circuit found *Lawson* to be persuasive, *Lawson* "provides absolutely no guidance and has no application to the facts of this case" because the question before the court was the constitutionality of Washington state statutes[25] authorizing the use of a railroad corridor for public nonrailroad use without compensation and, thus, did not involve the Trails Act or railbanking.

Defendant also argues that *Lawson* is inapplicable to this case because it did not consider the Trails Act or railbanking, and cites to *Good v. Skagit County,* 104 Wash. App. 670, 17 P.3d 1216, *review denied,* 144 Wash.2d 1013, 32 P.3d 283 (2001). *Good v. Skagit County,* a Washington Court of Appeals decision, which is not a State of Washington Supreme Court decision, and which holds only that the Trails Act "preempts state law on just compensation remedies such that a petitioner [alleging a Trails Act taking] must bring a claim for just compensation under the Tucker Act in the Federal Court of Claims." *Good v. Skagit Cnty.,* 17 P.3d at 1217; *see also* 28 U.S.C. § 1491; *Preseault I,* 494 U.S. at 11–17, 110 S.Ct. 914 (finding that the remedy for any taking caused by the Trails Act was a Tucker Act remedy).

---

**24.** Although the *Lawson* court used the term "abandonment," the court was referring to a previous paragraph in the *Lawson* decision in which the State of Washington Supreme Court described the two ways in which an easement could be extinguished: either abandonment, which the Washington Supreme Court termed "outright abandonment," or exceeding the scope of the easement, which the same court termed "abandonment." *Lawson v. State,* 730 P.2d at 1311–13. Regardless of the terminology used, the holding by the State of Washington Supreme Court rested on a finding that the scope of the easement had been exceeded. *Id.* at 1311–12 ("In addition to outright abandonment of a right of way, there may be a change in use of the right of way which is inconsistent with the purpose for which the right of way was granted .... clearly, a hiking and biking trail is not encompassed within a grant of an easement for railroad purposes only.").

**25.** The *Lawson* plaintiffs filed suit challenging the constitutionality of two Washington statutes that "authorize[d] a change in the use of a railroad right of way to a public nonrailroad use without compensation to holders of reversionary interests in the right of way." *Lawson v. State,* 730 P.2d at 1309.

There is no disagreement that an alleged Trails Act, takings claim must be filed in the United States Court of Federal Claims. *See* 28 U.S.C. § 1491; *Toscano v. United States,* 98 Fed.Cl. 152, 153 (2011) (quoting *Morris v. United States,* 392 F.3d 1372, 1375 (Fed.Cir. 2004) (" '[T]he Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000.' ")). The *Lawson* reasoning is relevant to decisions in this court because it was adopted by the United States Court of Appeals for the Federal Circuit in *Preseault II,* as a case "on all fours with the case before us," therefore, is not only relevant, but binding on the decisions issued by this court, which must follow the Federal Circuit directives. *See Strickland v. United States,* 423 F.3d 1335, 1338 n. 3 (Fed.Cir.) ("Ordinarily, a trial court may not disregard its reviewing court's precedent. There are two narrow exceptions: if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision.") (citing *Crowley v. United States,* 398 F.3d 1329, 1335 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.), *cert. denied,* 546 U.S. 1031, 126 S.Ct. 733, 163 L.Ed.2d 569 (2005) and *Bankers Trust N.Y. Corp. v. United States,* 225 F.3d 1368, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2000), *reh'g en banc denied* (Fed.Cir.2005)); *see also Hall v. Sec'y of Dep't of Health and Human Servs.,* 93 Fed.Cl. 239, 247 ("This court may not ignore the binding precedent of the Federal Circuit unless the United States Supreme Court or a federal statute expressly overrules that precedent." (citing *Strickland v. United States,* 423 F.3d at 1338)), *recons. denied* (2010), *aff'd* 640 F.3d 1351 (Fed.Cir.), *cert. denied sub nom. Hall v. Sebelius,* — U.S. —, 132 S.Ct. 815, 181 L.Ed.2d 525 (2011). Moreover, in *Preseault II,* the Federal Circuit indicated that "if the easements were in existence in 1986 when, pursuant to ICC Order, the City of Burlington established the public recreational trail, its establishment could not be justified under the terms and within the scope of the existing easements for railroad purposes. The taking of possession of the lands owned by the Preseaults for use as a public trail was in effect a taking of a new easement for that new use, for which the landowners are entitled to compensation." *Preseault II,* 100 F.3d at 1550.

The defendant further alleges that the procedural posture of the *Lawson* case dictated that the *Lawson* plaintiffs' factual allegations were presumed true, and, therefore the *Lawson* case did not address the language of the deeds. It is correct that the State of Washington Supreme Court stated, "we emphasize at the outset that the trial court dismissed this case on King County's motion to dismiss for failure to state a claim upon which relief can be granted," and "the plaintiffs' factual allegations are presumed to be true," for a failure to state a claim motion. *Id.* at 1310–11. Regardless of the posture of the case before the State of Washington Supreme Court, the basic position of the State of Washington Supreme Court on the scope of railroad easements is clear, subject to application of the specific facts of each case. The *Lawson* court enunciated important guidance for rails to trails cases involving Washington State property, guidance which was then adopted by the United States Court of Appeals for the Federal Circuit in *Preseault II,* as follows: "[d]efendants argue that under Washington law a railroad is a perpetual public easement. They contend that a railroad right of way easement does not terminate upon a change from one transportation use to another transportation or recreation use, or any other consistent public use. We disagree." *Id.* at 1311.

**Railbanking and Interim Trail Use**

Defendant further argues that there are decisions which have concluded that conversion to interim trail use does not exceed the scope of easements. In support of its argument that railbanking with interim trail use in the *Longnecker* class action is within the scope of the easements because it is a railroad purpose, the defendant cites *Chevy Chase Land Co. of Montgomery County v. United States,* 230 F.3d 1375, 1999 WL 1289099 (Fed.Cir. Dec. 17, 1999) (unpublished table decision),[26] *reh'g and reh'g en*

26. After the adoption of Federal Circuit Rule 32.1, parties may cite nonprecedential disposi-

banc denied (Fed.Cir.), cert. denied 531 U.S. 957, 121 S.Ct. 380, 148 L.Ed.2d 293 (2000). Defendant argues that the *Chevy Chase Land Co.* court applied Maryland law and rejected a takings claim " 'on the state law ground that the original easement authorizes the current recreational trail use' and noting that under Maryland law, the railbanking process 'did not work an abandonment of the easement.' " (quoting *Chevy Chase Land Co. of Montgomery Cnty. v. United States,* 230 F.3d 1375, 1999 WL 1289099, at *3). Responding to a certification request from the United States Court of Appeals for the Federal Circuit, *Chevy Chase Land Co. of Montgomery Cnty. v. United States,* 158 F.3d 574 (Fed.Cir.1998), the Maryland Court of Appeals, interpreting a 1911 Maryland railroad deed, concluded: "We believe it indisputable that use of the right-of-way as a trail is consistent with its essential nature relating to the 'pass[ing] over land of another' and is a reasonable use of a general right of way. Accordingly, the scope of the right-of-way in the instant case encompasses use as a hiker/biker trail." *Chevy Chase Land Co. v. United States,* 355 Md. 110, 733 A.2d 1055, 1076 (1999). After the Maryland Court of Appeals responded to the certification request, the Federal Circuit, in a brief, unpublished decision adopted the state court's interpretation, and rejected plaintiff's claim for an unconstitutional taking in the State of Maryland. *Chevy Chase Land Co. of Montgomery Cnty. v. United States,* 230 F.3d 1375, 1999 WL 1289099, at *2. The Federal Circuit stated:

> The Court of Appeals' answers to the certified questions, which we accept, state that the current recreational trail use of the easement is a permissible use, no acts of

abandonment of that use being shown. Consequently, as we stated in *Preseault,* the servient estate holder, here the Land Company, cannot show a property interest that has been impermissibly taken. We do not consider the Country Club's new state law argument, *see Jay v. Secretary of Health & Human Servs.,* 998 F.2d 979, 983, n. 4 (Fed.Cir.1993), and thus the Country Club lacks grounds to support its takings claim.

*Chevy Chase Land Co. of Montgomery Cnty. v. United States,* 230 F.3d 1375, 1999 WL 1289099, at *3. Notably, the Federal Circuit indicated that the Maryland Court of Appeals held that "since the easement [in the 1911 conveyance] is not limited in scope to railroad purposes, and embraces the current trail use, 'a party alleging abandonment must show more than an intent to abandon railroad service.' " *Id.* at *2 (quoting *Chevy Chase Land Co. v. United States,* 733 A.2d at 1080). As this court has determined above, the scope of the Right of Way Deeds in the *Longnecker* class action was limited to railroad purposes, and, therefore, the Federal Circuit's brief, unpublished decision adopting a State of Maryland court's interpretation of Maryland law, carries little weight with this court when interpreting State of Washington property and source deeds with clear "railroad purposes" language regarding the intent of the source deed easements granted.

Defendant also cites to *State by Washington Wildlife Preservation, Inc. v. State,* 329 N.W.2d 543 (Minn.), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983), in which the Supreme Court of Minnesota interpreted railroad deeds under Minnesota law. *See id.* at 545–46.[27] The *State by*

---

tions issued after January 1, 2007. *See* Fed. Cir. R. 32.1 (2011). The rule makes no provision regarding the citation of nonprecedential dispositions issued before that time. *Chevy Chase Land Co. of Montgomery County v. United States* was issued as an unpublished table decision in 1999. *See Chevy Chase Land Co. of Montgomery Cnty. v. United States,* 230 F.3d 1375, 1999 WL 1289099.

**27.** Just as the Federal Circuit cited to *Lawson* in *Preseault II,* the Federal Circuit also cited to *State by Washington Wildlife Preservation, Inc.,* noting that the decision was one of the few to hold that the conversion to a recreational trail falls within the scope of an original railroad

easement. *See Preseault II,* 100 F.3d at 1544. The Federal Circuit indicated that:

> The [*State by Washington Wildlife Preservation, Inc.*] court with little analysis declared that use of such a right-of-way for a recreational trail is consistent with the purpose for which the easements were originally acquired, public travel, and that such use imposes no additional burden on the servient estates. The court specifically pointed out that "[w]hile the grantors were undoubtedly aware that a railroad would be constructed on the land, none of the deeds limit the use to railroad purposes." [*State by Wash. Wildlife Pres., Inc. v. State,* 329 N.W.2d]

*Washington Wildlife Preservation, Inc.* court stated:

> Significantly, however, none of the deeds expressly limit the easement to railroad purposes, provide that the interest conveyed terminates if use for railroad purposes ceases, or provide that the easement would exist only for so long as the right-of-way was used for railroad purposes. While the grantors were undoubtedly aware that a railroad would be constructed on the land, none of the deeds limit the use to railroad purposes.

*Id.* at 546. The *State by Washington Wildlife Preservation, Inc.* court also stated that the "[u]se of the right-of-way as a recreational trail is consistent with the purpose for which the easement was originally acquired, public travel, and it imposes no additional burden on the servient estates." *Id.* at 545. As noted above, however, this court has concluded that the language of the Right of Way Deeds in the *Longnecker* class action is clear and was limited to railroad purposes. In sum, the Right of Way Deeds did not establish trail use as within the scope of the easements at issue regarding the plaintiffs included in the *Longnecker* class action. Moreover, in *Lawson v. State,* the Washington case which comes closest to addressing the issue before this court, the State of Washington Supreme Court rejected the proposition that an easement granted for railroad purposes could be used for any public transportation purpose and indicated that under State of Washington law a recreational trail is outside the scope of a railroad purpose easement. *See Lawson v. State,* 730 P.2d at 1312. Neither *Chevy Chase Land Co.* or *State by Washington Wildlife Preservation, Inc.* holds that railbanking with interim trail use is a railroad purpose; instead, the court in each case interprets the easements included in the particular deeds at issue in those cases to include more than railroad purposes. *See Chevy Chase Land Co. of Montgomery Cnty. v. United States,* 230 F.3d 1375, 1999 WL 1289099, at *2; *State by Wash. Wildlife Pres., Inc. v. State,* 329 N.W.2d at 545.

Defendant also looks to the text of the Right of Way Deeds to try and demonstrate that railbanking is a railroad purpose, noting that the easements were granted for the "construction, operation and maintenance of said railroad company's *proposed* line of railroad." (emphasis added). The defendant argues that "railbanking and interim trail use are wholly consistent with, and within the scope of, easements granted for *future* railroad construction, operation and maintenance" because "[r]ailbanking and interim trail use conserves the corridor for future active rail service." (emphasis in original). Therefore, according to defendant, "[t]here is no specified time period within which the railroad must construct the rail line," and "[p]laintiffs now are in exactly the same situation as the original grantors of the easements to the railroad. The railroad has a current property interest in the corridor for future railroad construction, operation and maintenance." In response, plaintiffs stress "[t]he government's argument that the easements contemplated future *railroad* use just highlights that future *trail* use was not contemplated ... the railroad purpose easement does not contemplate use of the line as a recreational trail; the railroad purpose easement never allowed the railroad to build a recreational trail." (emphasis in original). Plaintiffs argue that "[i]f one accepts the government's logic, then it would not matter what the railroad used the easement for, so long as it had the right to use the line in the future as a railroad."

The language at issue in the Right of Way Deeds states that a right of way is granted "for the construction, operation and maintenance of *said* railroad company's [referencing the TO & GHR] *proposed* line of railroad...." (emphasis added). The rail line contemplated was, as indicated above, constructed, operated and maintained pursuant to the source deed easements. The entire context of the source deeds was for railroad purposes. There is no indication that use as a recreational trail, or even construction of another, separate or replacement railroad

at 546. Furthermore, said the court, even though abandoned for railroad purposes, the easements were not abandoned for public trav-

el purposes, including travel by hikers, bikers, cross-country skiers, and horseback riders. *Preseault II,* 100 F.3d at 1544.

line in the future was anticipated by the grantors in the late 1890s or 1900s. The source deed grantors conveyed the easements to the TO & GHR for the benefit of a rail line constructed at the time and did not contemplate interruption of the use of the easement for other purposes, such as a recreational trail, followed by construction of a new railroad line more than one hundred years later. The government's claim, that from now until time immemorial, and at any unspecified time in the future, a rail line could be constructed that would be within the scope of the source deed easements, in order to avoid responsibility for takings claims, creates an unfair burden on the land for property owners.

In addition, the Federal Circuit in *Toews v. United States* suggested that the government cannot escape takings liability for imposing a trail use outside the scope of a railroad easement by asserting that the use is railbanking, with interim trail use:

> As a result of the imposition of the recreational trail and linear park, the easement for railroad purposes was converted into a new and different easement. The references in the ICC's and the City of Clovis's various documents to railbanking and possibility that one day the railroad easements might be used for a light rail system do not change the analysis. There is a reality test in takings law. It is clear from the record that for the foreseeable future these lands will be used for the recreational trail project. Whether there ever will be a light rail system or other railroad service over these paved routes in Clovis is a matter of speculation.... Such speculation does not provide a basis for denying protection to existing property rights under the Constitution.

*Toews v. United States,* 376 F.3d at 1381.

The defendant also cites to *Troha v. United States,* 692 F.Supp.2d 550 (W.D.Pa.2010), for the proposition that railbanking with interim trail use is within the scope of railroad purpose easements. In *Troha,* the United States District Court for the Western District of Pennsylvania found that easement deeds "for the purposes of said Railroad" and limited to " 'railroad purposes' " encom-

passed use as a public recreational trail under Pennsylvania law because railbanking with interim trail use preserves future rail service by conserving the right of way in a " 'rail-ready state' " and allowing " 'investment in the upkeep of rail networks....' " *Id.* at 563 (quoting *Moody v. Allegheny Valley Land Trust,* 601 Pa. 655, 976 A.2d 484, 491–92 (2009)). The court in *Troha* relied on another Pennsylvania decision, *Moody v. Allegheny Valley Land Trust,* and borrowed language from *Moody* regarding the railroad purposes served by railbanking. *See Moody v. Allegheny Land Trust,* 976 A.2d at 491–92 (terming railbanking "a method of rail maintenance and preservation" which "provides conservation of this right-of-way in a rail-ready state during a period when rail service is not feasible ... [and] preserves rail networks for the purposes of rail service in the future"). The *Moody* court, in turn, relied on another Pennsylvania court case, *Buffalo Township v. Jones,* 778 A.2d 1269 (Pa. Commw.Ct.2001), *aff'd,* 571 Pa. 637, 813 A.2d 659 (2002), *reargument denied* (Pa.), *cert. denied,* 540 U.S. 821, 124 S.Ct. 134, 157 L.Ed.2d 41 (2003), for the proposition that, under Pennsylvania law, a railroad does not abandon a right of way by transferring it to a trail operator for railbanking with interim trail use because railbanking preserves a railroad corridor. *See Moody v. Allegheny Land Trust,* 976 A.2d at 489 ("In *Buffalo Township,* this Court established that private railbanking is valid as long as the terms of the railbanking are in compliance with Section 1247(d) of the National Act.... Railbanking consistent with the requirements of Section 1247(d) means that the right-of-way is preserved for future use by another rail operator....").

Washington State law, not Pennsylvania State law, controls the case at bar. *See Preseault I,* 494 U.S. at 20, 110 S.Ct. 914 (O'Connor, J., concurring); *Toews v. United States,* 376 F.3d at 1371; *Preseault II,* 100 F.3d at 1534–49; *Whispell Foreign Cars, Inc. v. United States,* 97 Fed.Cl. at 331. No State of Washington case has been identified which has considered whether railbanking is a railroad purpose, and no State of Washington case has cited to *Troha.* In fact, the State

of Washington Supreme Court rejected the concept that a railroad easement could constitute a perpetual public easement under Washington law in *Lawson v. State*, 730 P.2d at 1313. Moreover, no federal court has relied on the holding in *Troha* that railbanking with interim trail use preserves future rail service. In fact, the only court to cite to the *Troha* decision is the United States Court of Federal Claims. For example, in a footnote in *Raulerson v. United States*, 99 Fed.Cl. 9, 12 n. 2 (2011), the court cited to *Troha* and stated: "But *see Troha v. United States*, 692 F.Supp.2d 550, 559–60 (W.D.Pa. 2010) (holding that railbanking agreement precluded finding of abandonment)." *Raulerson v. United States*, 99 Fed.Cl. at 12 n. 2. In *Biery v. United States*, 99 Fed.Cl. 565 (2011), the court noted that included in the defendant's submissions to the court was a letter supplementing earlier pleadings regarding the *Moody* and *Troha* cases. *See Biery v. United States*, 99 Fed.Cl. at 568 n. 2. *Troha* remains an outlier as compared to other cases applying state law to interpret railroad easements.

The characterization of railbanking as a railroad purpose within the scope of the easement in *Troha* also conflicts with the Federal Circuit's direction requiring courts to evaluate whether trail use is within the scope of an easement. *See Ladd v. United States*, 630 F.3d at 1019 ("It is settled law that a Fifth Amendment taking occurs in Rails–to–Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement."); *see also Ellamae Phillips Co. v. United States*, 564 F.3d at 1372–73 (citing the *Preseault II* factors as the "determinative issues for takings liability" in cases arising under the Trails Act); *Caldwell v. United States*, 391 F.3d at 1229 ("A Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail." (citing *Preseault*

*II*, 100 F.3d at 1552 and *Toews v. United States*, 376 F.3d at 1376)).

Moreover, courts in this Circuit have declined to find railbanking a railroad purpose or even a relevant consideration for analysis of a claim for a Trails Act taking. *See, e.g., Preseault II*, 100 F.3d at 1554 (Rader, J., concurring) (Rejecting the railbanking argument as a "vague notion" incapable of overriding the present use of the property as a recreational trail.); *Capreal, Inc. v. United States*, 99 Fed.Cl. at 146 (Interpreting Massachusetts law in which the court stated, "that railbanking is too hypothetical and unlikely to serve as a railroad purpose."); *Nordhus Family Trust v. United States*, 98 Fed.Cl. 331, 339 (2011) (Interpreting Kansas law, the court stated, "[i]n the present case, there is no evidence of any plan to reactivate the rail service—simply a speculative assertion by Defendant that some resumed rail service could occur in the future. The transfer of the easement to entities completely unconnected with rail service, and the removal of all rail tracks on the corridor, lead the Court to conclude that any future rail use simply is unrealistic.");[28] *Macy Elevator, Inc. v. United States*, 97 Fed.Cl. at 730 (Interpreting Indiana law and relying on *Preseault II* to deem railbanking "irrelevant to the question of whether a taking has occurred."); *Rogers v. United States*, 90 Fed.Cl. at 432 (Interpreting Florida law and indicating, "[h]ere, as in *Preseault II*, the use of the right-of-way as a public trail while preserving the right-of-way for future railroad activity was not something contemplated by the original parties to the Honore conveyance back in 1910."); *Glosemeyer v. United States*, 45 Fed.Cl. 771 (2000) (Interpreting Missouri law, the court stated, "[i]n sum, neither component of railbanking—the preservation of the rail line for future use nor the 'interim' use of the easement as a recreation trail—constitutes a railroad purpose under Missouri law."). Consequently, defendant's argument that railbanking is both a railroad purpose and within the scope of the easements is not

**28.** Defendant argues that "neither *Nordhus* nor *Capreal* has any relevance to the legal issues in dispute before this Court." The defendant is correct that neither *Nordhus Family Trust v. United States*, 98 Fed.Cl. 331, nor *Capreal, Inc. v.*

*United States*, 99 Fed.Cl. 133, applied Washington law, however, both suggest that *Troha* also remains an outlier compared to other rails to trails decisions.

persuasive and should not be applied in a case interpreting the law of the State of Washington. In sum, the plain language of the Right of Way Deeds makes it clear that uses other than for railroad purposes, including as a recreational trail, exceed the scope of easements of the Right of Way Deeds under consideration in the *Longnecker* class action. The issuance of the NITU, which authorized the conversion of the railroad easements to trail use, therefore, denied plaintiffs their reversionary interests in the land.

The defendant makes two additional arguments to attempt to defeat liability in this case. The defendant argues that the plaintiffs cannot "argue that the STB's issuance of the NITU exceeded the scope of the easements," because "the NITU did not mandate interim trail use" and "subsequent actions by third parties were required to initiate interim trail use." In the context of cases regarding claim accrual to determine when all elements of a claim have been perfected and the statute of limitations begins to run, the United States Court of Appeals for the Federal Circuit has repeatedly recognized that the issuance of the NITU is the government action which triggers the taking, if trail use is outside the scope of the easement. *See Ladd v. United States*, 630 F.3d at 1023 ("A taking occurs when state law reversionary property interests are blocked. The NITU is the government action that prevents the landowners from possession of their property unencumbered by the easement." (citation and footnote omitted)); *Caldwell v. United States*, 391 F.3d at 1235 ("We therefore hold that the appropriate triggering event for any takings claim under the Trails Act occurs when the NITU is issued.").

In addition, relying on *Navajo Nation v. United States*, 631 F.3d 1268 (Fed.Cir.2011), the defendant asserts that because the "STB did not require any parties to enter into an interim trail use agreement.... The United States therefore should not be held liable for a taking, because third parties chose to enter into an agreement for interim trail use." As described above, the issuance of the NITU by the STB is the government action which effects the taking, and, moreover, the Feder-

al Circuit has rejected defendant's argument in two previous cases. In *Preseault II*, the United States argued that "since it was the City that actually established the trail, the United States should not be considered the responsible actor." *Preseault II*, 100 F.3d at 1551. Referring to the federal control over the regulation of rail lines and abandonment, the Federal Circuit held "when the Federal Government puts into play a series of events which result in a taking of private property, the fact that the Government acts through a state agent does not absolve it from the responsibility, and the consequences, of its actions." *Id.* The same argument was made again by defendant before the Federal Circuit in *Toews v. United States*, 376 F.3d at 1381:

> [T]he Government argued in addition that, whatever the scope of the easements, if it was exceeded by the way in which the new use as a recreational trail was implemented, that was a consequence of what the City of Clovis did, since Clovis actually established the trail, and thus it was not the responsibility of the United States.

*Id.* The *Toews* court characterized this as a "meritless argument," noting that it had been rejected before, quoting the *Preseault II* passage quoted above. *See Toews v. United States*, 376 F.3d at 1381. Nothing in *Navajo Nation* defeats this precedent. In *Navajo Nation*, the plaintiff asserted that a federal statute requiring consent from both the Navajo and the Hopi for development within certain designated portions of a Reservation resulted in a taking of the property of the Navajo Nation. *See Navajo Nation v. United States*, 631 F.3d at 1269, 1271. The Federal Circuit held that the Navajo Nation's claim was time-barred because it was filed more than six years after the congressional enactment of a 1980 Amendment that codified the mutual consent requirement. *See id.* at 1274. The 1980 Amendment, rather than the Hopi Tribe's decision "to impose a moratorium on approval of Navajo construction projects," was the governmental exercise which constituted the action upon which a takings claim could be premised. *Id.* Moreover, *Navajo Nation* is not a rails-to-trails case and *Navajo Nation*, which cites with approval *Ladd v. United States* and *Caldwell*

*v. United States*, does not undermine the established principle that if a taking occurs in a rails to trails context, it occurs upon the issuance of the NITU by the STB rather than the establishment of a trail. See *Navajo Nation v. United States*, 631 F.3d at 1275.

**Abandonment**

Finally, the defendant argues that "plaintiffs cannot demonstrate that the railroad abandoned those easements in the railroad corridor." Defendant alleges that abandonment might be the dispositive issue, and argues that the railroad "retained a present property interest in the easements when it reserved to itself in each quit-claim deed to the Cities, 'the right to reactivate and restore rail service on the Property.'" Although noting that abandonment could provide plaintiffs with a basis for a taking, plaintiffs indicate that the scope of the easement is the dispositive issue, and that "the issue of abandonment need only be reached if the scope of the easement issue is decided in favor of the government." As determined above, the court has found in favor of the plaintiffs that the issuance of the NITU authorizing a recreational trail exceeded the scope of the easements for the Right of Way Deeds. Courts in this Circuit have indicated that if the scope issue is decided in favor of plaintiffs, it could be determinative regarding the issue of abandonment. *See Toews v. United States*, 376 F.3d at 1376 (court declined to decide the issue of abandonment because the "defining issue in this case is the question of the scope of the easements originally granted to the railroad"); *see also Preseault II*, 100 F.3d at 1549 ("[W]e find the question of abandonment is not the defining issue, since whether abandoned or not the Government's use of the property for a public trail constitutes a new, unauthorized, use."); *Jenkins v. United States*, 102 Fed.Cl. at 614–15 ("[T]he government's narrow interpretation of the Trails Act divorces the language of the Act from its history, purpose, and regulatory scheme. The Trails Act scheme does not, as the government contends, authorize only that the railway right-of-way will not be deemed abandoned for railroad purposes if the corridor is railbanked."); *Ybanez v. United States*, 102 Fed.Cl. 82, 87 (2011) (citing *Pre-*

*seault II*, 100 F.3d at 1533 and *Toews v. United States*, 376 F.3d at 1381) ("Where the scope of a new easement exceeds the original grant, a determination of whether abandonment occurs is unnecessary."); *Whispell Foreign Cars, Inc. v. United States*, 100 Fed.Cl. 529, 541 (2011) (footnote omitted) ("Because the court has determined that recreational trail use is not within the scope of the easement, the court need not determine at this time whether the easement was abandoned under Florida law."); *Ellamae Phillips Co. v. United States*, 99 Fed.Cl. 483, 487 (2011) (interpreting the General Railroad Right of Way Act of 1875, a Judge of the Court of Federal Claims, noted: "Defendant raises several arguments concerning abandonment. Since we have determined that trail use exceeds the scope of the easement, we have no need to address the contingent issue of abandonment."); *Rogers v. United States*, 90 Fed. Cl. at 432 ("Because it is clear that the Honore easement did not encompass recreational trails, this Court need not reach the third prong of the *Preseault II* analysis—i.e., whether, even if the grants of the railroad's easements were broad enough to encompass recreational trails, these easements had terminated prior to the alleged taking.").

Despite the indications by courts in this Circuit that this court might not need to reach the issue of abandonment, the court notes that abandonment is a question of fact and has not been fully briefed in the filings submitted to the court to date. *See Preseault II*, 100 F.3d at 1546 (quoting *Lague, Inc. v. Royea*, 152 Vt. 499, 503, 568 A.2d 357 (1989)) (applying Vermont law and holding "[u]nder Vermont law, 'the question whether there has been an abandonment . . . is one of fact.'") (omission in original); *see also Carolina Plating Works, Inc. v. United States*, 102 Fed.Cl. 555, 560 (2011) (quoting *Preseault II*, 100 F.3d at 1546) ("In *Preseault II*, the Federal Circuit held that whether an abandonment has occurred is a question of 'fact, and the fact that question relates to a right of way taken by a railroad company does not make it one of law.'"). Under State of Washington law, abandonment is a question of fact. *See Mouat v. Seattle, Lake Shore & Eastern Ry. Co.*, 16 Wash. 84, 47 P. 233, 234 (1896) ("It must follow that what would constitute an abandonment of the

property for railroad purposes, within the meaning of the condition in the deed, would be a question of fact, as to which different minds might honestly come to different conclusions."); *see also Heg v. Alldredge,* 157 Wash.2d 154, 137 P.3d 9, 13 (2006) (quoting *Neitzel v. Spokane Int'l Ry. Co.,* 80 Wash. 30, 141 P. 186, 190 (1914)) (noting that " 'the lapse of time does not, of itself, constitute an abandonment, but is a circumstance for the jury to consider in arriving at the intention of the [owner of the dominant estate].' ") (brackets in original). If abandonment is raised in future proceedings, the parties will have the opportunity to brief whether or not the finding by this court that the scope of the easements were exceeded precludes the necessity of determining whether or not the easement was abandoned.

## CONCLUSION

For the reasons discussed above, the court finds that the scope of the easements granted by the Patton Deed, Ellis Deed, Fleetwood Deed, Row Deed, Carpenter Deed, Adams Deed, and Chambers Deed were exceeded by the issuance of the NITU authorizing a recreational trail and that defendant's railbanking argument is rejected. The court **DENIES** the defendant's motion for partial summary judgment and **GRANTS** the plaintiffs' motion for partial summary judgment. Future proceedings will be scheduled by separate Order.

IT IS SO ORDERED.